[763 NYS2d 86]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DER-
RICK BROOKS, Appellant.

Second Department, August 4, 2003

*Laura R. Johnson,* New York City (*Lorraine Maddalo* of counsel), for appellant.

*Charles J. Hynes, District Attorney,* Brooklyn (*Leonard Joblove* and *Anthea H. Bruffee* of counsel), for respondent.

**OPINION OF THE COURT**

FRIEDMANN, J.

■ The defendant failed to attend the risk assessment hearing which was held to determine his status pursuant to the Sex Offender Registration Act (also known as Megan's Law) (*see* Correction Law art 6-C [hereinafter SORA]). In his absence, the Supreme Court determined that he was a level three sex offender. The defendant contends that he did not waive his right to be present and therefore was denied due process when the hearing was held in his absence. This appeal presents the issue of whether the waiver-forfeiture analysis, which is used to determine when a criminal action may proceed in the defendant's absence, should be used in a SORA hearing, even though it is not part of a criminal action. We conclude that the same waiver-forfeiture analysis should apply to a SORA hearing and that the evidence in the case at bar establishes that the defendant forfeited his right to be present at the hearing.

I

The 22-year-old defendant was arrested for the rape of a 14-year-old girl on May 14, 1993, in an apartment where she was babysitting, and he subsequently was indicted for rape in the first degree and other related charges. On March 10, 1994, the defendant pleaded guilty to sexual abuse in the first degree in satisfaction of the indictment. He was adjudicated a second violent felony offender based on his conviction in 1991 of attempted robbery in the first degree, and was sentenced on March 21, 1994 to an indeterminate term of imprisonment of 2½ to 5 years.

The defendant was scheduled to be released from prison on March 24, 2000. In late December 1999, the New York State

Board of Examiners of Sex Offenders (hereinafter the Board) notified the sentencing court that it was recommending a risk level three classification for the defendant. The Board forwarded its risk assessment case summary to the Supreme Court, and a hearing was held by the Supreme Court on March 14, 2000, pursuant to Correction Law § 168-n. The defendant was not present, although an attorney from the Legal Aid Society (hereinafter the LAS) appeared for him.

At the commencement of the hearing, the prosecutor produced a handwritten letter dated March 9, 2000, on the letterhead of the Elmira Correctional Facility (hereinafter Elmira), where the defendant was incarcerated. The letter was addressed to inmate records from a Sergeant Perry. The letter stated: "Please advise this inmate of the scheduled court date March 14-00 at the Kings County Supreme Court." Underneath this sentence was written: "I Brooks, Derrick #94R2388 refuse to attend my above scheduled court date (3-14-00). Reason: Time before CR date is too short." The letter was signed by the defendant and by Sergeant Perry. The Supreme Court surmised that "CR" referred to conditional release.

The defense counsel objected to proceeding with the hearing because the defendant had not been produced. He stated that he had no contact with the defendant, and therefore he could not speak to the authenticity of the letter. The defense counsel contended that the Supreme Court should not accept the letter as a knowing and voluntary waiver. He further noted that Correction Law § 168-*l* (8) provides that, where the court is unable to make a risk level determination prior to the defendant's scheduled release date, it shall adjourn the hearing until after the defendant is discharged. The defense counsel requested that the Supreme Court adjourn the hearing until after the defendant's release, "at which time we will make efforts to get him in here so that he can provide his input with respect to the classification level." The defense counsel further stated that he was unable to speak to the risk assessment factors, since he had no contact with the defendant.

The Supreme Court reminded the defense counsel that this matter first came before it on February 24, 2000, for a risk assessment hearing. Because the defendant had not been produced, the Supreme Court signed an order to produce him and notified the LAS. The Supreme Court further reminded the defense counsel that it had asked him to assign an attorney to represent the defendant. Although an LAS attorney was assigned to the case, apparently that particular attorney

was presently engaged in a trial on another matter. The Supreme Court noted that the defense counsel had been aware since February 24, 2000, that the matter was going to proceed on March 14, 2000.

Regarding the letter signed by the defendant, the prosecutor advised the Supreme Court that she sent the order to produce to Elmira, and spoke to a woman in the inmate records department to make sure that the defendant was given a copy of the order to produce. She was subsequently advised by "inmate records" that the defendant was shown a copy of the order to produce, that it was "explained what he was coming down here for and that he's refused to come down here." She contended that since the defendant refused to attend, the hearing should go forward.

The defense counsel acknowledged that he received a telephone call from the Supreme Court on the date that the case was previously on the calendar, that he assigned an attorney to handle the matter, and that the attorney was currently engaged in jury selection on another matter. The Supreme Court noted that the defense counsel had been provided with the Board's recommendation and case summary. Since the defendant was due to be released from prison the following week, the Supreme Court decided to proceed with the hearing.

The case summary prepared by the Board assigned the defendant a total of 140 points based on 15 factors employed to assess the risk of a repeat offense (see Correction Law § 168-l [5]). In making its assessment, the Board relied on information provided in the defendant's presentence report, information regarding his prior criminal history and information provided by the correctional facility regarding his postoffense behavior, including any disciplinary proceedings brought against him in prison. Based on the Board's guidelines, a defendant whose total points exceed 110 is designated a risk level three, meaning that the risk of a repeat offense is high, and the relevant law enforcement agencies may, inter alia, disseminate his name, address, photograph and background information "to any entity with vulnerable populations related to the nature of the offense committed by such sex offender" (Correction Law § 168-l [6] [c]). In addition, the defendant must register with the Division of Criminal Justice Services and periodically verify his address with the local law enforcement agency, potentially for the rest of his life (see Correction Law §§ 168-f, 168-h).

At the hearing, the Supreme Court and the attorneys discussed the Board's assignment of points for each of the 15

factors. The Board did not assign any points to the defendant for 7 of the 15 factors. Based on undisputed evidence as to the victim's age and the defendant's prior criminal history, the defense counsel did not object to the Board's assignment of a total of 60 points with respect to three of the remaining eight factors. With respect to four of the remaining five factors, the defense counsel argued that he could not adequately respond to the Board's assignment of points because the defendant was not present. Specifically, the defense counsel contended that he had insufficient information from the defendant to contest the points assigned for the defendant's use of violence at the time of the crime, his history of drug or alcohol abuse, his acceptance of responsibility for the crime, and his conduct while confined in prison. These four factors accounted for 55 of the 140 points assigned to the defendant, and, if reduced, might have caused him to be classified as a risk level two sex offender, for which the notification and registration requirements are less onerous (*see* Correction Law § 168-*l* [6] [b]; § 168-h [1]).

The Supreme Court accepted the Board's assessment and designated the defendant as risk level three sex offender. The Supreme Court directed the prosecutor to inform the defendant of the result of the hearing and its consequences.

## II

As a preliminary matter, the defendant's due process claim is confined to the Supreme Court's decision to deny an adjournment and to conduct the hearing in his absence. He does not contend that the Board or the Supreme Court, in any other manner, failed to afford him due process or to comply with the requirements of SORA. In *Doe v Pataki* (3 F Supp 2d 456, 471-472 [SD NY 1998]), the court set forth the due process rights of a convicted sex offender facing a risk level classification under SORA. These are (1) a judicial determination of his risk level classification, (2) notice of the classification proceeding sufficiently in advance of the hearing to prepare a challenge, (3) notice of the proceeding which includes a statement of its purpose and the Board's recommended risk level classification, (4) representation by counsel, (5) prehearing discovery, (6) proof by the state of the facts supporting each risk factor by clear and convincing evidence, and (7) a right to appeal (*see also People v David W.*, 95 NY2d 130 [2000]). These due process rights have been incorporated into Correction Law § 168-n (3). Insofar as relevant to this appeal, Correction Law § 168-n (3) provides that "[t]he court shall allow the sex offender to appear and be heard" at the risk assessment hearing.

## III

The defendant contends that his due process right to be present was violated when the Supreme Court proceeded with the hearing in the absence of proof that he voluntarily, knowingly, and intelligently waived his right to be present. In a criminal action, a defendant may waive or forfeit his right to be present. Where a defendant fails to appear for trial, and it is ambiguous as to whether his absence was deliberate, a finding that he waived his right to be present requires, at a minimum, proof that he was informed in some manner of the nature of the right to be present and the consequences of failing to appear for trial, that is, that the trial would proceed in his absence (*see People v Parker*, 57 NY2d 136, 141 [1982]; *see also People v Toomer*, 272 AD2d 990 [2000]; *People v Lamb*, 235 AD2d 829 [1997]; *People v Underwood*, 201 AD2d 597 [1994]). Thus, a waiver can be implied if the record reflects that the defendant is aware that the trial will proceed even though he fails to appear (*see People v Spotford*, 85 NY2d 593, 599 [1995]).

On the other hand, a forfeiture of the right to be present does not involve an evaluation of the defendant's state of mind but occurs by operation of law and as a matter of public policy (*see People v Sanchez*, 65 NY2d 436, 443-444 n [1985]). Where it is clear that the defendant's absence is deliberate, despite knowledge that the trial is about to begin, he or she forfeits his or her right to be present, regardless of whether he or she was informed that the trial would proceed in his or her absence. Such conduct indicates "a defiance of the processes of law sufficient to effect a forfeiture" (*People v Sanchez, supra* at 444; *see People v Logan*, 271 AD2d 549, 550 [2000]; *People v Bumbray*, 259 AD2d 364 [1999]; *People v Griffin*, 225 AD2d 792 [1996]). Before proceeding in the defendant's absence, the court must make an inquiry and recite on the record the facts and reasons it relied upon in determining that the defendant's absence was deliberate (*see People v Brooks*, 75 NY2d 898, 899 [1990]; *see also People v Williams*, 221 AD2d 674 [1995]).

Although a defendant has a due process right to appear and be heard at a SORA hearing, the question is whether the hearing court is under the same constraints as a trial court in proceeding in the defendant's absence. A SORA risk assessment hearing is not considered part of a criminal action, as the criminal action terminates upon the imposition of sentence (*see* CPL 1.20 [16]; *People v Stevens*, 91 NY2d 270, 276-277 [1998]). The Court in *Stevens* (*supra* at 275), noted that SORA is "predominantly regulatory" (quoting Bill Jacket, L 1995, ch

192, Senate Mem in Support, at 6), and other courts have treated Megan's Law as primarily regulatory in nature (*see e.g. Russell v Gregoire,* 124 F3d 1079 [9th Cir 1997], *cert denied* 523 US 1007 [1998]; *Doe v Pataki,* 120 F3d 1263 [2d Cir 1997], *cert denied* 522 US 1122 [1998]; *E.B. v Verniero,* 119 F3d 1077 [3d Cir 1997], *cert denied sub nom. W.P. v Verniero,* 522 US 1109 [1998]). As stated in *Doe v Pataki* (*supra,* 3 F Supp 2d at 470), risk level classification hearings fall "somewhere between a criminal proceeding in which a defendant is entitled to a full panoply of rights * * * and a simple administrative proceeding, in which participants have traditionally been afforded less process. Certainly, the due process protections required for a risk level classification proceeding are not as extensive as those required in a plenary criminal or civil trial" (internal quotation marks and citations omitted). Moreover, a defendant's presence at a SORA hearing is entirely voluntary. While CPL 260.20 provides that a defendant "must" be present at the trial of an indictment, Correction Law § 168-n (3) requires only that the sentencing court afford the defendant an opportunity to appear (*see People v Brasier,* 169 Misc 2d 337 [1996]).

Nevertheless, a SORA determination undeniably has a profound impact on a defendant's liberty interest due to the registration and community notification provisions (*see Doe v Pataki, supra,* 3 F Supp 2d at 466-468; *E.B. v Verniero, supra*). In this regard, parole revocation hearings provide a close analogy. Parole revocation hearings affect a parolee's liberty interest but are classified as administrative proceedings (*see People ex rel. Piccarillo v New York State Bd. of Parole,* 48 NY2d 76, 80 [1979]). Since revocation of parole is not part of a criminal proceeding, the "full panoply" of rights due a defendant in such a proceeding do not apply (*Morrissey v Brewer,* 408 US 471, 480 [1972]; *see People ex rel. Matthews v New York State Div. of Parole,* 58 NY2d 196, 203-204 [1983]). Due process, however, requires a hearing, albeit informal in structure, and that the parolee receive notice and have the right to appear (*see Morrissey v Brewer, supra* at 487-488).

In cases where the parole revocation hearing was conducted in the parolee's absence, courts have required evidence that the parolee validly waived his right to appear (*see e.g. People ex rel. Herrera v Eastmond,* 290 AD2d 365, 366 [2002]; *People ex rel. Scott v Travis,* 251 AD2d 264 [1998]; *People ex rel. McKay v Sheriff of County of Rensselaer,* 152 AD2d 786, 787 [1989]; *see also Matter of White v New York State Div. of Parole,* 60 NY2d 920, 922 [1983]). In such cases, the courts have

frequently treated an "undelivered defendant form" signed by the parolee as sufficient evidence of a waiver of the parolee's right to be present (*see e.g. People ex rel. Herrera v Eastmond, supra* at 366; *People ex rel. Scott v Travis, supra; People ex rel. McKay v Sheriff of County of Rensselaer, supra*).

Although risk assessment hearings are informal in nature, the issue of whether the hearing may proceed in the defendant's absence should be subject to the same guidelines as in a criminal action. The waiver-forfeiture analysis used in criminal actions will protect the defendant's right to be present without burdening the court or the People. Therefore, where there is a question as to whether the defendant's failure to appear is deliberate, in order to establish a waiver, evidence must be presented that the defendant was advised of the hearing date, of his right to be present, and that the hearing would be conducted in his absence. Reliable hearsay on this issue is admissible (*see* Correction Law § 168-n [3]). Where the defendant's absence is clearly deliberate, his right to be present is forfeited, without regard to whether he was informed that the hearing would proceed in his absence.

The circumstances in the case at bar establish that the defendant forfeited his right to be present. His express refusal to attend court when presented with the order to produce demonstrated that his conduct was deliberate, and the letter indicated that he did not have a valid excuse for his refusal. It should be remembered that the hearing is only one stage in a process that begins months before a defendant's release from prison. A defendant is notified by the Board at least 30 days prior to making its recommendation that the case is under review and of his or her opportunity to submit evidence to the Board. At least 20 days prior to the court hearing, a defendant is notified of the hearing date and is provided with a copy of the Board's recommendation and the statement of reasons for its recommendation (*see* Correction Law § 168-n [3]). There is no allegation in this case that the defendant was not provided with the required notices or was not provided an opportunity to participate in the proceedings leading up to the actual hearing. Under the circumstances, his refusal to participate in the hearing can only be regarded as deliberate.

Furthermore, the finding of a forfeiture is justified as a matter of public policy (*see People v Sanchez, supra; see also People v Brasier, supra*). The Legislature intended risk level determinations to be completed and the registration and notification requirements in place prior to a defendant's release from prison

(*see* Correction Law § 168-n [2]; § 168-e [1]). It would thwart that policy to permit a defendant, by obstructionist conduct, to delay the hearing until after his release.

As this case involved a forfeiture of the right to be present, the People were not required to establish that the defendant was informed that the hearing would proceed in his absence (*see People v Sanchez, supra; cf. People v Parker, supra*). The colloquy in the record demonstrates that the Supreme Court made a sufficient inquiry into the facts and that its determination to proceed in the defendant's absence was based on the letter signed by the defendant and on its obligation to make a risk level determination prior to the defendant's release from prison (*see People v Brooks, supra*).

## IV

Finally, the defendant contends that the sentencing court should have granted his request for an adjournment to ensure his appearance since the statute permits the court to adjourn the hearing if it cannot be completed prior to the sex offender's release date (*see* Correction Law § 168-*l* [8]). The Supreme Court correctly denied the request for an adjournment. Since the defense counsel had not spoken to the defendant, there was no reason for the Supreme Court to believe that the defendant would be willing to appear on another date even closer to his release date from prison or that he would appear after his release from prison. The defendant is not without a remedy to correct any perceived error in the risk level determination. Pursuant to Correction Law § 168-*o* (2), he can seek reconsideration by the sentencing court of the risk level determination (*see People v Wroten,* 286 AD2d 189 [2001]).

Accordingly, the order should be affirmed, without costs or disbursements.

FEUERSTEIN, J.P., SMITH and GOLDSTEIN, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.