[956 NYS2d 131]

THE PEOPLE OF STATE OF NEW YORK, Respondent, v GASPARI
GUTIERREZ-LUCERO, Appellant.

Second Department, December 19, 2012

### APPEARANCES OF COUNSEL

*Lynn W.L. Fahey*, New York City (*William Kastin* of counsel; *David Lowry* on the brief), for appellant.

*Charles J. Hynes*, District Attorney, Brooklyn (*Leonard Joblove* and *Morgan J. Dennehy* of counsel), for respondent.

### OPINION OF THE COURT

RIVERA, J.P.

"Auditur et altera pars," or "The other side shall be heard as well," are words attributed to Lucius Annaeus Seneca, the Roman philosopher, in the tragedy *Medea*. This concept is encompassed in the legal principle known as "due process." The instant appeal involves fundamental due process considerations in the context of Correction Law article 6-C, the Sex Offender Registration Act (hereinafter SORA). Particularly, we are presented with the issue of whether the defendant, a sex offender facing risk level classification under SORA, was deprived of his due process rights, where he did not receive notice of the SORA hearing, he did not waive his right to be present thereat, and the hearing was held in his absence. The Supreme Court determined, and the People presently take the position on appeal, that the defendant's due process rights were not violated because he was ultimately adjudicated a level one sex offender, the lowest risk level assignable under SORA. Contrary thereto, for the reasons that follow, the defendant's due process rights were violated and thus, we reverse the order appealed from.

## I. Factual and Procedural Background

In 2003, the defendant was charged under Kings County superior court information No. 5518/2003, with attempted sodomy in the first degree (Penal Law §§ 110.00, 130.50), relating to the sexual abuse of his girlfriend's then-six-year-old daughter. The defendant apparently waived his right to be prosecuted by indictment. He pleaded guilty to the crime charged and was sentenced to a determinate term of imprisonment consisting of $3^{1}/_{2}$ years, to be followed by five years' postrelease supervision.

The record on appeal includes a "NOTICE" dated September 2, 2010, pursuant to Correction Law article 6-C, which was purportedly sent by the Supreme Court, Kings County, to the defendant at the Marcy Correctional Facility, directing him to appear before the Supreme Court on October 18, 2010. A copy

of this notification was also apparently sent to assigned defense counsel Carol Schajer. Further, in an "order to produce," entered September 2, 2010, the Supreme Court directed the warden or superintendent of Marcy Correctional Facility to produce the defendant for a SORA hearing on October 18, 2010, at 9:30 a.m.

### The Case Summary and Risk Assessment Instrument

In a case summary dated August 26, 2010, the Board of Examiners of Sex Offenders (hereinafter the Board) stated that the defendant apparently entered the United States "illegally circa 1992," and that the Bureau of Immigration and Customs Enforcement had "lodged a deportation order against him." The Board added, "it is possible that he may be deported to his native country of Mexico."

In a risk assessment instrument dated August 27, 2010, the defendant was assessed a total of 90 points, which placed him in a presumptive level two category. The Board recommended that a departure from the presumptive risk level was not warranted.

### The January 6, 2011, SORA Hearing

On January 6, 2011, the People and defense counsel appeared before the Supreme Court, Kings County, for a SORA hearing. The defendant was *not* present at this hearing.

At the commencement of the hearing, the People indicated that they had provided the Supreme Court and defense counsel with "documentation" from U.S. Immigration and Customs Enforcement showing that the defendant was deported to Mexico on September 3, 2010. In this regard, a letter addressed to Assistant District Attorney (hereinafter ADA) Allegra Santomauro from U.S. Immigration and Customs Enforcement Deportation Officer Lukasz Kubicz, dated October 29, 2010, states, in pertinent part, as follows:

> "As per your office[']s inquiry regarding [the defendant], ICE [Immigration and Customs Enforcement] official records shows that the subject was removed from the United States on September 03, 2010 from Harlingen, TX to Mexico. Removal was witnessed and confirmed by ICE/ERO officers. For immigration purposes this case is closed."

Thereafter, the Supreme Court stated that "the presence of the defendant" was "[w]aived for [purposes of] the hearing," adding "[w]e will do the hearing." The People, however, interjected:

"Your Honor, I want to make a record for the Court. I checked with the Department of Corrections, there is *no waiver* in the file. I have also spoken with our Appeals Bureau and as such without an effective waiver it is the People's position that this hearing *cannot happen because the defendant did not waive his right to be present.*" (Emphasis added.)

The court asked, "[s]o how do I get him here?" The court then stated:

"He could be back in the country right now you [sic] without a requirement to register as a sex offender, I am going to go proceed with the hearing and then you could concede error on an appeal if you wish to. But I am not going to leave this probationer, I should say sex offender who has been deported from this country after serving a prison sentence for a sexual act against a youngster under ten years of age without a designation as a sex offender which would require him to register if he came back into the country."

At this point, defense counsel registered an objection stating, "I never had contact with this client and to my understanding he has never signed a waiver [of his right to be present at the SORA hearing]. And without my client's input into this case I am unable to make effective arguments on his behalf."

The People reiterated to the court that they did *not* "choose to proceed" with the hearing. Specifically, the ADA asserted, "I don't know how the defendant would know he is required to register if he is not present for this hearing."

Notwithstanding the foregoing, the court continued, as follows:

"The Court rules that his being deported amounts to a de facto waiver of this [sic] presence at the hearing and I am going to proceed and I will make my record then you can have your objection and you could find [sic] notice of appeal. We can litigate this issue."

Defense counsel thereafter stated:

"What I want to put on the record is that I was assigned this case on September 16th [2010]. I wrote a letter to my client at the facility. I was informed I was at—I am handing up a copy of the returned en-

velope. I am asking it be marked Defense A and moved into evidence as Defense A. There is an indication written in red ink 8/27/10, paroled or liens to immigration. So he was sent to immigration even before I was assigned to this case."

The court then made the following statements:

"I have a letter that is part of, I will make part of the hearing I am about to conduct.

"From the United States Immigration Customs Enforcement Service dated October 29, 2010 indicating that [the defendant] was removed from the United States on September 3, 2010 from Harlingen, H-A-R-L-I-N-G-E-N, Texas to Mexico. Removal was witnessed and confined [sic] by ICU Immigrations Customs Enforcement officers for immigration purposes. The case is closed. The court has a file which contains a risk level assessment instrument and a case summary. The risk factors that are designated by the agency indicates that the defendant scores at 90 points. The only one that I have difficulty with is behavior while confined which is post offense. They assessed ten points for his unsatisfactory performance for behavior while in custody. That is not reflected in the record. The Court adjudicates that those ten points should not be assessed. All the other factors are can [sic] prove [sic] by clear and convincing evidence.

"The Court makes a determination of a risk level assessment point total of 80 points which still places the defendant at a level two sexually violent offender. That is the ruling of the Court. I will sign a ruling to that effect."

### The January 14, 2011, SORA Hearing

On January 14, 2011, the People and defense counsel again appeared before the Supreme Court. The defendant was not present. At this proceeding, the court stated:

"This was a risk level assessment hearing that was before me on January 6th. The People indicated to me that they would not go forward with the hearing because the defendant had been deported and that the court could not have jurisdiction over him.

"However, it [was] the court's opinion that just based on the underlying conviction, if he were here he could not contest the fact that I could adjudge him a risk level 1 offender based on the conviction by itself.

"Balancing the interest of protection of the public and noting that the defendant was deported to the country of Mexico and the well-known ability of people to return to the United States from the country of Mexico, I'm going to in this case, over the objection of both sides, adjudge the defendant a level 1 offender as a risk level with the ability to open up the proceeding to a higher, to a possible higher level should he return to the United States illegally.

"And I'm adjusting my—I've done some research and I tend to agree with the People that I would not have the jurisdiction without him being present to indicate the factors that would raise him to a 2 or a 3.

"However, just based on the underlying conviction, I feel that I am balancing the interest of the due process rights of the defendant with the interest and the protection of the public, having him require to register even if he returns to the country illegally for the next twenty years as a Level 1 offender. And that's my ruling."

Defense counsel repeated that she had been assigned to represent the defendant *after* he had already been "taken by immigration" and that the People previously stated that there had been no signed waiver by the defendant of his right to be present at the SORA hearing. The court conceded, "[t]here is no waiver."

Defense counsel further argued that the case of *Doe v Pataki* (3 F Supp 2d 456 [1998]) gave the defendant the "absolute right to be present" at the SORA hearing. Counsel added, "[h]e's clearly not even in the country, as far as we know. He has a right to know this. We have no idea if [the defendant] even received notice in this case. There are no exceptions to *Doe versus Pataki* that I am aware of."

At this point, the court stated:

"I am attempting to make one. Because having been

deported because he was illegally in the country renders him unavailable to my jurisdiction.

"If he were here, the best level assessment he could receive would be a 1 based on his conviction to the crime he was convicted of. And balancing his due process rights to even contest the Level 1 which I don't believe he would have any legal basis to contest against the protection of the public should he enter this country again illegally, he would be required to register as a sex offender. I am designated [sic] him a Level 1 over your objection and you can file a notice of appeal."

Defense counsel referred to the case of *People v Gonzalez* (69 AD3d 819, 819 [2010]), quoting therefrom,

"[t]o establish whether a defendant, by failing to appear at a SORA hearing, has waived the right to be present, evidence must be shown that the defendant was advised of the hearing date, of the right to be present at the hearing, and that the hearing would be conducted in his or her absence."

The court, however, indicated, "I find exceptional circumstances that I placed on the record to adjudge him a Level 1 offender." Thus, the court stated that it was "changing the [SORA] designation" to a level one "over the defendant's objection."

Consistent therewith, in an order dated January 14, 2011, the Supreme Court designated the defendant a level one sex offender.

## II. The Parties' Contentions on Appeal

On appeal, the defendant contends that his due process rights were violated when the SORA hearing was held in his absence and he did not waive his right to be present. He notes that he was deported before receiving *any* notice of the SORA hearing and his counsel never had an opportunity to communicate with him before the hearing. The defendant adds that both the People and defense counsel repeatedly objected to holding the hearing in the defendant's absence without a waiver.

In their brief on appeal, the People, in effect, take a position contrary to their original stance in the first hearing. Now, the People argue that the Supreme Court's decision to conduct the SORA risk assessment hearing in the defendant's absence was proper because "even though [the] defendant had not waived

his right to attend the hearing, he was adjudicated a level one (low risk) sex offender, and thus the outcome of the hearing was the most favorable to him that was possible." Thus, the People contend that this Court should "uphold" the Supreme Court's determination, designating the defendant a level one sex offender.

In reply, the defendant reiterates that his due process rights were violated. He asserts that the People waived their present claims that the lack of notice and the defendant's absence from the hearing are inconsequential. Further, he contends that the People's assertion that it was proper to hold the hearing in the defendant's absence is without merit. In this regard, the defendant notes that, even with an adjudication as a level one, he nevertheless has protected due process rights. He argues, "[u]nder the People's reasoning, any offender who is to be adjudicated a level one offender need not receive notice of or be present at a SORA hearing . . . [b]ut due process is not subject to a sliding scale based upon the level of the penalty imposed." Moreover, he asserts that there are serious consequences relating to the subject sex offender designation which require him to register as a sex offender and subject him to criminal penalties if he fails to do so. In sum, he states that "even when an individual is ultimately adjudicated a level one offender, the risk assessment hearing must 'comport with minimum State and Federal constitutional requirements of due process.' " He insists that those requirements were not met in this case.

## III. Legal Analysis

A SORA proceeding "determines the risk of reoffense by a person convicted of a qualifying sex offense and requires that individual to register with law enforcement officials according to that risk level" (*People v Pettigrew*, 14 NY3d 406, 408 [2010]; *see People v Mingo*, 12 NY3d 563, 570-571 [2009]). Pursuant to the statutory framework contained in Correction Law article 6-C, the Board "shall" make a recommendation to the court regarding an offender's risk level classification, "within sixty calendar days prior to" the offender's discharge, parole, or release from incarceration (Correction Law § 168-*l* [6]).

"Correction Law § 168-n governs the procedure for the initial judicial determination of a sex offender's risk level upon release from incarceration" (*People v Wyatt*, 89 AD3d 112, 117 [2011]). In relevant part, Correction Law § 168-n (3) provides that "[n]o later than thirty days prior to the board's recommendation, the

sex offender shall be notified that his or her case is under review and that he or she is permitted to submit to the board any information relevant to the review."

Further,

"[a]t least twenty days prior to the determination proceeding, the sentencing courtshall notify the district attorney, the sex offender and the sex offender's counsel, inwriting, of the date of the determination proceeding and shall also provide the district attorney, the sex offender and the sex offender's counsel with a copy of the recommendation received from the board and any statement of the reasons for the recommendation received from the board" (Correction Law § 168-n [3]).

This statute expressly sets forth that the notice "shall" include the following statement or a substantially similar statement:

" 'This proceeding is being held to determine whether you will be classified as a level 3 offender (risk of repeat offense is high), a level 2 offender (risk of repeat offense is moderate), or a level 1 offender (risk of repeat offense is low), or whether you will be designated as a sexual predator, a sexually violent offender or a predicate sex offender, which will determine how long you must register as a sex offender and how much information can be provided to the public concerning your registration. If you fail to appear at this proceeding, without sufficient excuse, it shall be held in your absence. Failure to appear may result in a longer period of registration or a higher level of community notification because you are not present to offer evidence or contest evidence offered by the district attorney' " (*id.*).

"The written notice to the sex offender shall also advise the offender that he or she has a right to a hearing prior to the court's determination, and that he or she has the right to be represented by counsel at the hearing" (*id.*).

Correction Law § 168-n (3) also provides that "[t]he court shall allow the sex offender to appear and be heard" (*id.*). "The state shall appear by the district attorney . . . who shall bear the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (*id.*).

Correction Law § 168-n (6) states that

"[i]f a sex offender, having been given notice, including the time and place of the determination proceeding in accordance with this section, fails to appear at this proceeding, without sufficient excuse, the court shall conduct the hearing and make the determinations in the manner set forth in subdivision three of this section."

Significantly, a sex offender facing a risk level classification has certain due process rights including (1) a judicial determination of his risk level classification, (2) notice of the risk level assessment proceeding sufficiently in advance of the hearing to prepare a challenge, (3) notice of the proceeding that must include a statement of its purpose and the Board's recommended risk level classification, (4) representation by counsel, (5) pre-hearing discovery, (6) proof by the State of the facts supporting each risk factor by clear and convincing evidence, and (7) a right to appeal (*see Doe v Pataki*, 3 F Supp 2d at 471-473; *People v David W.*, 95 NY2d 130, 133 [2000]; *People v Black*, 33 AD3d 981, 981-982 [2006]; *People v Brooks*, 308 AD2d 99, 103 [2003]). These due process rights have been incorporated into Correction Law § 168-n (*see People v Black*, 33 AD3d at 982).

As stated in *Doe v Pataki* (3 F Supp 2d at 470), risk level classification hearings fall

"somewhere between a criminal proceeding in which a defendant is entitled to a full panoply of rights . . . and a simple administrative proceeding, in which participants have traditionally been afforded less process. Certainly, the due process protections required for a risk level classification proceeding are not as extensive as those required in a plenary criminal or civil trial" (*id.* [internal quotation marks and citation omitted]; *see People v Erb*, 59 AD3d 1020 [2009]; *People v Brooks*, 308 AD2d at 105).

Nevertheless, a "SORA determination undeniably has a profound impact on a defendant's liberty interest due to the registration and community notification provisions" (*People v Brooks*, 308 AD2d at 105; *see Doe v Pataki*, 3 F Supp 2d at 466-468). For this reason, in assigning risk levels to convicted sex offenders under SORA, the aforementioned procedural protec-

tions "are required to satisfy procedural due process" (*Doe v Pataki*, 3 F Supp 2d at 471).

" 'A sex offender facing risk level classification under the Sex Offender Registration Act (hereinafter SORA) has a due process right to be present at the SORA hearing but his presence at this noncriminal proceeding is entirely voluntary' " (*People v Arrahman*, 83 AD3d 680, 680 [2011], quoting *People v Porter*, 37 AD3d 797, 797 [2007]; *see People v Jackson*, 94 AD3d 961 [2012]; *People v Gonzalez*, 90 AD3d 1005, 1006 [2011]; *People v Gonzalez*, 69 AD3d 819 [2010]; *People v Brooks*, 308 AD2d at 103). Notably, this Court has held that

> " '[t]o establish whether a defendant, by failing to appear at a SORA hearing, has waived the right to be present, evidence must be shown that the defendant was advised of the hearing date, of the right to be present at the hearing, and that the hearing would be conducted in his or her absence' " (*People v Arrahman*, 83 AD3d at 680, quoting *People v Porter*, 37 AD3d at 797; *see People v Jackson*, 94 AD3d at 961; *People v Gonzalez*, 90 AD3d at 1006; *People v Gonzalez*, 69 AD3d at 819; *People v Brooks*, 308 AD2d at 106).

Where the record contains no evidence that the defendant received notice of the hearing date, this Court has determined that the defendant's due process rights were violated (*see People v Gonzalez*, 90 AD3d at 1006; *People v Gonzalez*, 69 AD3d at 819). Similarly, where a defendant's failure to appear at the hearing is not deliberate and the defendant did not waive his appearance, this Court has found that the defendant is entitled to a new risk level assessment hearing (*see People v Arrahman*, 83 AD3d at 680).

Applying the foregoing to the facts of this case, we conclude that the defendant's due process rights were violated.

First, the record contains *no* evidence that the defendant ever received notice of the SORA hearing date and his right to be present (*see People v Distaffen*, 71 AD3d 1597, 1598 [2010]). A "NOTICE" dated September 2, 2010, was sent by the Supreme Court to the defendant at the Marcy Correctional Facility, directing him to appear before the court for a SORA hearing that was to take place on October 18, 2010. Apparently, the defendant had been paroled to immigration authorities on August 27, 2010. The letter from U.S. Immigration and Customs Enforcement confirms that the defendant was deported from Texas to Mexico

on September 3, 2010. Additionally, defense counsel was assigned to this case on September 16, 2010, approximately two weeks after the defendant had already been deported to Mexico, and counsel had not been able to communicate with the defendant.

Second, at the initial SORA hearing, the People advised the court that the defendant did not waive his right to be present at the hearing. Conceding the defendant's failure to waive his right to be present, the People stated, "without an effective waiver it is the People's position that this hearing cannot happen because the defendant did not waive his right to be present." Defense counsel similarly informed the court, "I never had contact with this client and to my understanding he has never signed a waiver [of his right to be present at the SORA hearing]. And without my client's input into this case I am unable to make effective arguments on his behalf." The People reiterated to the court that they did *not* "choose to proceed" with the hearing. Specifically, ADA Santomauro asserted, "I don't know how the defendant would know he is required to register if he is not present for this hearing."

Notwithstanding the foregoing, and despite the protestations by both the People and defense counsel, the Supreme Court proceeded with the SORA hearing in the defendant's absence, even though he had not received notice, and had not properly waived his right to be present thereat. Although the court later revisited its initial level two designation and changed the defendant's designation to a level one category, the defendant's due process protections, as outlined in *Doe v Pataki* and incorporated into Correction Law § 168-n, were nevertheless violated.

As noted by the court in *Doe v Pataki*, "[t]he Supreme Court has stressed that 'fair notice' is 'the bedrock of any constitutionally fair procedure' " (*Doe v Pataki*, 3 F Supp 2d at 471, quoting *Lankford v Idaho*, 500 US 110, 121 [1991]). Sex offenders subject to SORA have a protected liberty interest that entitles them to the procedural due process rights discussed above (*see Doe v Pataki*, 3 F Supp 2d at 468). The Constitution, Correction Law § 168-n (3), and case law do not confine these constitutional rights to only level two and level three sex offenders. A dangerous precedent would be established if, as urged by the Supreme Court and the People on appeal, the hearing court could simply obviate due process rights by designating a sex offender in a level one category. This reasoning would render the require-

ment of a SORA hearing for, and the assignment of counsel to represent, a level one sex offender unnecessary. The Supreme Court's belief that there is no basis to contest the outcome because a level one designation is the "best . . . he could receive," creates a scenario that cannot be countenanced.

While, on appeal, the People admit that the defendant's "due process rights could have been violated by the court's decision to conduct the risk assessment hearing in his absence without first obtaining from him a valid waiver of his right to be present," they now claim that level one was "the best possible outcome" and thus, he was not deprived of his right to be present. This new position, which is in stark contrast to their initial stance in the first hearing before the Supreme Court, is disingenuous. In their brief, the People rely upon certain cases where defendants were excluded from a *Sandoval* hearing and a sidebar conference (*see e.g. People v Roman*, 88 NY2d 18 [1996]; *People v Favor*, 82 NY2d 254 [1993]). Those cases involve distinct situations and are therefore inapposite.

Compounding the error, the People, who had the burden of proving the facts supporting the determination by clear and convincing evidence (*see* Correction Law § 168-n [3]), made no showing whatsoever to establish any SORA risk level determination. Notably, at the initial hearing, the People indicated that they "choose" not to proceed with the hearing. At the second proceeding, the ADA who appeared did not even address the court. Instead, the court assumed the People's role.

## IV. Conclusion

The Supreme Court's attempt to fashion a "remedy" and make an "exception" to *Doe v Pataki* is offensive to the constitutional principles of due process and cannot be sustained in law and reason. "The primary goal[ ] of SORA . . . is to 'protect the public from the danger of recidivism posed by sex offenders' " (*People v Buss*, 11 NY3d 553, 558 [2008], quoting *People v Stevens*, 91 NY2d 270, 275 [1998]). In order to ensure that the rights of *all persons* are protected, that goal must invariably coexist with the fundamental elements of due process, namely, notice and an opportunity to be heard, afforded to all sex offenders facing risk level classification under SORA. Those rights are not confined to only those sex offenders subject to level two and level three designations. Even where a sex offender is adjudicated a level one sex offender, due process requirements must be satisfied. Accordingly, the order is re-

versed, on the law, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.

DICKERSON, CHAMBERS and AUSTIN, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.