[973 NE2d 697, 950 NYS2d 287]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEVIN
CHESTNUT, Appellant.

Argued May 3, 2012; decided June 7, 2012

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*William G. Kastin* and *Lynn W.L. Fahey* of counsel), for appellant. In this one-witness identification case, the conceded misjoinder of appellant's robbery charge with his codefendant's unrelated drug and resisting arrest counts was not harmless error when it resulted in the admission of otherwise admissible and inflammatory evidence amounting to nearly one half of the trial testimony. (*People v Castro-Restrepo*, 169 AD2d 454; *People v Mahboubian*, 74 NY2d 174; *Wilson v Sirmons*, 536 F3d 1064; *United States v Francis*, 131 F3d 1452; *United States v Santoni*, 585 F2d 667; *People v*

*Gutkaiss*, 206 AD2d 628; *People v Minor*, 49 AD2d 828; *United States v Turoff*, 853 F2d 1037; *People v Pepin*, 6 AD2d 992; *People v Jorge*, 172 Misc 2d 795.)

*Richard A. Brown, District Attorney*, Kew Gardens (*Jennifer Hagan* and *John M. Castellano* of counsel), for respondent. Defendant's claim that his case was improperly joined with codefendant Hall's case is unpreserved for appellate review. Any error in the trial court's denial of defendant's motion for severance was, in any event, harmless. (*People v Person*, 8 NY3d 973; *People v Graves*, 85 NY2d 1024; *People v Garcia*, 83 NY2d 817; *People v Stephens*, 84 NY2d 990; *People v Kello*, 96 NY2d 740; *People v Liccione*, 50 NY2d 850; *People v Wells*, 15 NY3d 927; *Zafiro v United States*, 506 US 534; *United States v Lane*, 474 US 438; *People v Crimmins*, 36 NY2d 230.)

## OPINION OF THE COURT

JONES, J.

The issue presented is whether Supreme Court's error in denying defendant's requests for a severance based on the *improper joinder of certain counts* relating only to codefendant (*see* CPL 200.40 [1]) is harmless. We hold that Supreme Court's conceded error is not.

On November 6, 2005, in broad daylight, two assailants robbed the complainant at gunpoint as he was loading packages into his car on a street in Queens. Jewelry, cash, a cell phone, two fur coats and an expensive bag were forcibly stolen from the complainant. By Queens County indictment No. 658/2006, defendant and his codefendant were charged, on an acting-in-concert theory, with first- and second-degree robbery based solely on the complainant's identification. The same indictment also separately charged only the codefendant with four drug offenses and resisting arrest stemming from his arrest at his mother's home on January 16, 2006. Although the drug counts and the resisting arrest count had no connection to defendant or the November 6, 2005 incident, defendant, who was arrested in December 2005, and his codefendant were tried together, before a jury, on the single indictment.

Defendant's counsel, at numerous points during the proceedings, sought to sever the joint trial or otherwise advise the court of the impropriety of a joint trial in this case. For example, he:

> (1) noted, in defendant's pretrial omnibus motion, that defendant's codefendant had been "indicted for

a number of drug related offense[s] which by necessity will create substantial prejudice which will spill over and infect [defendant]";

(2) stated, in support of defendant's motion to sever, that "joint trials can be prejudicial when one defendant is not being accused of the same crimes as his co-defendant" and that defendant "should not be placed in a position where spillover testimony can adversely affect jury deliberations" (citing *Zafiro v United States*, 506 US 534, 539 [1993]);

(3) argued, during voir dire (about one week before trial), that defendant and his codefendant should not be tried jointly;

(4) stated, on the record just prior to jury selection, that defendant's codefendant "is charged with drugs in this case. My client is not. I think I have a Hercul[e]an task [in] preventing the jury from mixing that mash together";

(5) explained, following the trial court's opening remarks to the jury pool, "Your Honor, during the course of the trial I am anticipating that the People by virtue of the posture of this indictment are about to be offering proof of [defendant's codefendant] being involved in narcotics. . . . It's my intention that each and every time . . . the prosecutor attempts to do that, I am going to be objecting to it, Judge."

At this time, counsel further argued that a severance was "in order" because the drug evidence against defendant's codefendant "will enure to the total detriment of [defendant] who is not charged in any way with any narcotics";

(6) noted, in response to the trial court's statement that it had instructed the jury pool to consider the charges separately, that such an instruction was "insufficient to cure the prejudicial effect" of a joint trial, and that the People were "making a grave mistake" by pursuing such a trial;

(7) objected to that portion of the prosecutor's opening statement which referred to the warrant officers and the drug allegations because they did not

pertain to defendant. At this point in the proceedings, the trial court indicated that it understood counsel's objection and that counsel did not have to keep objecting;

(8) renewed his motion for severance based on the prosecutor's opening statement, arguing that the prosecutor exposed the jury to "excessive prejudicial information," and that defendant, who was not charged with any drug offenses, could "no longer get a fair hearing"; and

(9) objected to the drug-related testimony of police officers and other witnesses, and renewed his severance motion when one of the officers testified.

Although defendant's counsel made numerous requests for a severance, the People never took a position on any of defendant's applications; further, Supreme Court denied all of defendant's requests for severance without explanation.

Defendant and his codefendant were convicted, upon a jury verdict, of first-degree robbery. In addition, defendant's codefendant was convicted of three drug counts and resisting arrest. Defendant was sentenced to 12 years; his codefendant was sentenced to 25 years to life.

On appeal, defendant argued that the joinder of his robbery charges with the drug and resisting arrest charges against his codefendant violated CPL 200.40 (1), which provides that defendants may be jointly charged in a single indictment if (a) "all such defendants are jointly charged with every offense"; (b) "all the offenses charged are based upon a common scheme or plan"; (c) "all the offenses charged are based upon the same criminal transaction"; or (d) under certain circumstances where the indictment includes a count of enterprise corruption. The Appellate Division affirmed Supreme Court's judgment, holding:

"As the People correctly concede, the codefendant should have been tried separately pursuant to CPL 200.40 (1) as to the drug counts and resisting arrest count against him, as those counts in no way related to the defendant. Although the Supreme Court erred in denying the defendant's motion to sever the unrelated counts applicable only to the codefendant, the error was harmless" (81 AD3d 661 [2d Dept 2011] [citations omitted]).

A Judge of this Court granted defendant leave to appeal (17 NY3d 814 [2011]), and we now reverse.

■ ■ The Appellate Division concluded, and the parties agree, that Supreme Court erred in denying defendant's motion to sever the unrelated counts applicable only to his codefendant (*see* CPL 200.40 [1]). This error is clear because the Queens County indictment which charged defendant and his codefendant violated section 200.40 (1)'s direction concerning when defendants may be jointly charged in a single indictment; in other words, the instant joint trial was prohibited under CPL 200.40 (1).[1] Thus, the question before us is whether this nonconstitutional error is harmless.[2]

The harmless error doctrine is applicable only if: (1) the quantum and nature of the evidence against the defendant must be great enough to excise the error, and (2) the causal effect

---

1.  CPL 200.40 (1) provides that defendants may be jointly charged in a single indictment if (a) *"all such defendants are jointly charged with every offense"*; (b) "all the offenses charged are based upon a common scheme or plan"; (c) "all the offenses charged are based upon the same criminal transaction"; or (d) under certain circumstances, the indictment includes a count of enterprise corruption (emphasis added).

2.  We conclude, consistent with the Appellate Division, that defendant's argument was sufficiently preserved for appellate review. Contrary to the dissent's view, defendant's numerous requests for a severance, and other related statements in the record, not only apprised the trial court as to why severance was appropriate, they clearly indicated that the joinder of defendant and his codefendant was improper. Accordingly, the dissent's position that defendant's repeated objections arguably "reinforced the incorrect view that joinder was proper" such "that the trial judge had discretion to order severance" (dissenting op at 615) is untenable. CPL 200.40 (1), the sole provision that relates to the problem defendant repeatedly raised before the court, only allows a trial judge discretion to sever when joinder is proper, i.e., in accordance with the statute. Where, as argued at trial and conceded here, the joinder was *improper*, discretion does not apply; severance is required under the statute and severance is precisely the remedy defendant repeatedly sought. In further support of the conclusion that defendant's argument was preserved, the court, during the prosecutor's opening statement, confirmed that it understood defendant's objection and, following its denial of another severance application, stated, "You have an exception. It's noted. You don't have to keep doing this . . . It's preserved."

For preservation purposes, a party must make a specific objection regarding a claimed error in order to afford the trial court an opportunity to correct the error. However, the preservation rule's "specific objection" requirement should not be applied in the overly technical way the dissent urges; nor should a party's adherence to this requirement focus on minutiae or emphasize form over substance. In this case, where the facts demonstrate that defendant not only met the specific objection requirement (by repeatedly apprising the court of the error), but provided more information than was required, and where there is a judge, who is not only presumed to know the law, but has been apprised of and ruled on the specific issue numerous times, the preservation requirement is met.

that the error may nevertheless have had on the jury must be overcome (*see People v Crimmins*, 36 NY2d 230, 240 [1975]). That is, it must be established that the evidence against the defendant is overwhelming, such that it is likely that the trial error did not infect the jury's finding (*see id.* at 240-242). Stated differently, an error may be found to be harmless only where proof of guilt without reference to the error is overwhelming.

Contrary to the People's contention, the evidence in this case is far from overwhelming. This was a one-witness identification case where the sole identifying witness was the complainant (i.e., only the complainant identified defendant as a perpetrator). There was no corroborating evidence. No physical evidence linked defendant to the robbery and he made no inculpatory statements. To establish that the evidence of defendant's guilt was overwhelming in this case, the reliability of the complainant's identification of defendant cannot be in question. Because there was reason to doubt the reliability of the complainant's identification of defendant in the first instance, we reject the People's contention that the evidence was overwhelming in establishing defendant's guilt.

Indeed, the complainant's description of the second assailant (alleged to be defendant) did not fit defendant. The complainant, who is five feet eight inches, said the second assailant was his height; defendant is 5 feet 11 inches. Further, although the crime occurred in broad daylight, the complainant did not notice certain physical features of defendant (e.g., tattoos on his hands), even though he claimed he looked at that assailant's hands, which were six to seven inches away, "very closely" as he removed the complainant's jewelry, but he never reported seeing tattoos on those hands.

The complainant also gave only the most general descriptions of his assailants to the police (i.e., a five feet seven inch black man of average build and a lighter-skinned five feet eight inch man). These vague descriptions cast doubt on the accuracy of his subsequent identification, especially because the complainant testified that he was in close proximity to the assailant, alleged to be defendant, and that he looked at him for "at least a minute."

In addition, the complainant was tentative and uncertain in his initial identification of defendant. The complainant failed to definitively identify defendant's photograph two hours after the robbery, instead asking to have it enlarged and saying it

"look[ed] like" the man; a few weeks later the complainant could only say that defendant was "possibly" or "look[ed] like" the robber; the complainant only became "positive" in his identification of defendant about five weeks after the crime.

We further conclude that the second prong of the harmless error test was not met because here there is a great risk that Supreme Court's error infected the jury's finding. The improper joinder (of defendant and his codefendant) Supreme Court allowed, in clear violation of CPL 200.40 (1), necessarily prejudiced defendant.[3] Moreover, the prejudice to defendant was exacerbated by what flowed from the trial court's decision not to grant a severance.

The jury not only learned that four drug offenses and the offense of resisting arrest were allegedly committed by defendant's codefendant, but heard detailed testimony about these charges. This evidence concerned the police warrant squad's search of codefendant's mother's home, the propriety of the search, whether codefendant was using the bedroom where the drugs were found, the volume of drugs found (10 bags of crack cocaine, a "large bag" of marijuana, and 56 ziplock bags of marijuana), the drug paraphernalia used to package crack and marijuana, codefendant's refusal to comply with police orders, and police efforts to subdue and arrest codefendant. In total, 184 out of 400 pages, or 46%, of the trial testimony, 6 out of the 10 witnesses who testified, and 8 out of the 16 exhibits introduced at trial, related to the drug and resisting arrest counts, which, as stated, had nothing to do with defendant. The prejudicial effect of this voluminous testimony and other evidence (which came close to dominating the main issue at trial— i.e., how reliable was the complainant's identification) is clear: the jury could logically find that because defendant was involved with his codefendant, he, like the codefendant, was involved with drugs; if the jury made that finding, an inference could be drawn that the robbery at issue was committed for a drug-related purpose (e.g., to buy drugs).

In sum, the improper joinder, and what flowed from it, arguably tainted the proceedings by creating a strong risk that the voluminous evidence, unrelated to defendant, colored the jury's evaluation of defendant's robbery case, and, thereby, prejudiced defendant to the point that precludes us from concluding that Supreme Court's error is harmless.

---

**3.** Some degree of prejudice is inherent in every joint trial (*see People v Mahboubian*, 74 NY2d 174, 183-184 [1989]).

Finally, under these circumstances, the trial court's curative instructions did not cure the prejudice to defendant. That is, although the trial court (1) made it clear, in its final charge to the jury, that the counts of the indictment that were not related to the robbery applied only to defendant's codefendant and not to defendant, and (2) provided the jury with separate verdict sheets as to each defendant, the court did not instruct the jury to disregard the evidence related to those unrelated counts when considering defendant's guilt or innocence.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

READ, J. (dissenting). Defendant Kevin Chestnut never protested joinder on the ground he advances on appeal. Because he did not preserve his objection, we may not review it. I would therefore affirm the conviction without reaching the issue of harmless error addressed by the majority.

CPL 200.40 (1) permits joinder of criminal counts against two or more defendants where (a) the defendants are charged with every offense alleged in the indictment, (b) all the offenses charged are based upon a common scheme or plan, (c) all of the offenses are based upon the same criminal transaction or (d) the indictment includes a count charging enterprise corruption. Joinder is prohibited where these specified circumstances do not exist (see People v Spencer, 67 AD2d 867 [1st Dept 1979]; People v Banks, 45 AD2d 1024 [2d Dept 1974]).

Further, where counts are properly joined pursuant to CPL 200.40 (1), a defendant may nonetheless move for severance upon "good cause shown" (People v Mahboubian, 74 NY2d 174, 183 [1989]; People v McGee, 68 NY2d 328, 333 [1986]). Good cause includes, but is not limited to, a finding that the defendant will be unduly prejudiced by a joint trial (see Mahboubian, 74 NY2d at 183). "Upon such a finding of prejudice, the court may order counts to be tried separately, grant a severance of defendants or provide whatever other relief justice requires" (CPL 200.40 [1]).

As the majority points out, defendant on at least nine occasions "sought to sever the joint trial or otherwise advise the court of the impropriety of a joint trial in this case" solely on the basis of the prejudicial "spillover" effect of the proof against his codefendant on the drug and resisting arrest charges (majority op at 608, 609). In short, defendant made an objection that the trial court should exercise discretion to sever the charges;

he never once objected on the entirely different ground that the statute prohibited joinder altogether.

"The chief purpose of demanding notice through objection or motion in a trial court, as with any specific objection, is to bring the claim to the trial court's attention," thus affording the judge an opportunity to rectify an error or oversight, thereby maintaining the integrity of the eventual jury verdict in the interests of finality (*People v Gray*, 86 NY2d 10, 20 [1995]; *see also People v Patterson*, 39 NY2d 288, 294-295 [1976] ["A failure to object to a charge at a time when the trial court had an opportunity to effectively correct its instructions does not preserve any question of law that (the Court of Appeals) can review"]). Here, where defendant repeatedly focused on prejudice and did not object that CPL 200.40 (1) prohibited joinder under the circumstances presented in this case, the trial court was not apprised of and had no opportunity to rule on the latter ground (*see People v Robinson*, 88 NY2d 1001, 1002 [1996] ["to frame and preserve a question of law reviewable by this Court, an objection or exception must be made with sufficient specificity at the trial, when the nisi prius court has an opportunity to consider and deal with the asserted error"]). Indeed, defendant's repeated prejudice-related objections arguably reinforced the incorrect view that joinder was proper, but that the trial judge had discretion to order severance if he agreed that defendant's defense against the robbery counts would be unduly prejudiced by presentation of proof on the unrelated counts brought against codefendant.

It surely furthers the underlying purposes of preservation for parties to refer to the specific statutory text in a case such as this, where a statute clearly precludes the court's actions. Even so, I would consider defendant's objection preserved if he had at least once claimed to the trial judge that severance of the unrelated counts was required as a matter of law rather than as a matter of discretion. But he did not. Accordingly, I respectfully dissent.

Chief Judge LIPPMAN and Judges CIPARICK and PIGOTT concur with Judge JONES; Judge READ dissents and votes to affirm in a separate opinion in which Judges GRAFFEO and SMITH concur.

Order reversed, etc.