■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONNIE WELLS, Appellant. [30 NYS3d 198]—

Appeal by the defendant from an order of the Supreme Court, Queens County (Margulis, J.), dated May 2, 2013, which, after a hearing, designated him a level two sex offender pursuant to Correction Law article 6-C.

Ordered that the order is affirmed, without costs or disbursements.

In May 1998, the defendant invited his then 17-year-old biological daughter (hereinafter the victim) to visit him at his apartment in Queens County. According to the victim, while she was asleep, the defendant removed her pajama shorts and underwear, and pushed her pajama top up so as to expose her breasts. The victim awoke to find the defendant on top of her, kissing her breasts. Thereafter, the defendant continued to kiss the victim's breasts, placed his mouth on her vagina, and inserted his penis inside her vagina. He told the victim to "close [her] eyes and think about something else" while he engaged in sexual intercourse with her, until finally ejaculating on her leg.

For these acts, the defendant was charged, under Queens County indictment No. 2500/98, with sexual abuse in the first degree (Penal Law § 130.65 [2]), sexual abuse in the third degree (Penal Law § 130.55), incest in the third degree (Penal Law § 255.25), and sexual misconduct (two counts) (Penal Law § 130.20 [1], [2]).

Following a nonjury trial, by judgment rendered June 7,

2000, the defendant was convicted of sexual abuse in the third degree, incest in the third degree, and sexual misconduct (two counts). He was acquitted on the count of sexual abuse in the first degree.

Upon the defendant's appeal from the judgment of conviction, this Court affirmed the judgment (*see People v Wells*, 289 AD2d 599 [2001]). The Court of Appeals denied the defendant's motion for leave to appeal (*see People v Wells*, 98 NY2d 641 [2002]). At the time he committed the instant offenses, the defendant was under parole supervision based upon his conviction of various crimes unrelated to the instant matter. Those crimes included murder in the second degree, for which the defendant was sentenced to an indeterminate term of imprisonment of 15 years to life.

In a case summary and risk assessment instrument (hereinafter RAI) dated March 7, 2013, completed by the Board of Examiners of Sex Offenders (hereinafter the Board) pursuant to the Sex Offender Registration Act (Correction Law art 6-C [hereinafter SORA]), the Board assessed the defendant a total of 85 points, which presumptively placed the defendant in a risk level two category. As particularly relevant to the instant appeal, the defendant was assessed 20 points under risk factor 6. Specifically, in the case summary, the Board explained that the basis for the assessment of those points was that the victim was "physically helpless as the abuse began because she was asleep."

Prior to the SORA hearing, the People referred the Supreme Court (hereinafter the SORA Court) to the victim's grand jury testimony, and argued that this testimony established, by clear and convincing evidence, that the victim was sleeping when the abuse began. Defense counsel submitted an affirmation dated April 8, 2013, in opposition to the assessment of points under risk factor 6 or, in the alternative, for a downward departure. Defense counsel attached to his affirmation, inter alia, the case summary and the RAI. In his affirmation, counsel recounted the victim's trial testimony that she awoke from sleep to find the defendant engaging in sexual activity with her. Counsel then argued that the verdict acquitting the defendant of sexual abuse in the first degree necessarily indicated that the trial court had not credited the victim's claim that she awakened in the middle of being sexually abused. Thus, counsel maintained that there was no reliable basis upon which to find that the victim was asleep at the beginning of the incident and assess points for physical helplessness.

A SORA hearing was subsequently conducted on May 2,

2013. At the commencement of the hearing, defense counsel noted that, although the defendant's conviction occurred after a trial, the People were relying on grand jury minutes which had not been provided to the SORA Court or the defendant. Counsel added, "since the People have not provided me with the documents on which they are relying in this case, specifically the Grand Jury minutes, they should not be heard to argue as to their contents." In response, the prosecutor stated that the People did not have the trial testimony. The prosecutor did, however, provide the SORA Court and defense counsel with the "complaint report" and the indictment. Further, the prosecutor submitted the victim's grand jury minutes for the court's in camera review. The court offered the defendant an adjournment so that he could respond to "anything" the prosecutor had filed. The defendant, however, declined the court's offer of an adjournment.

The prosecutor argued that, at the trial, physical helplessness was "not charged in this case"; however, "the facts support[ed] a theory of physical helplessness for the sexual abuse." Defense counsel countered that, at the trial, physical helplessness was, in fact, charged with regard to the sexual abuse in the first degree count, of which the defendant was acquitted. Defense counsel then reiterated that the trial court had "rejected" the victim's credibility as to her testimony that she was asleep when the abuse began.

In an order dated May 2, 2013, the SORA Court designated the defendant a level two sex offender. In its findings of fact, the court stated that it had reviewed the Board's RAI and the case summary. The court stated that it did "not know" and "neither party had shown" why the trial court had acquitted the defendant of sexual abuse in the first degree. The SORA Court declined to find that, in acquitting the defendant of that count, the trial court discredited the victim's testimony or determined that the People had failed to prove the element of physical helplessness. Thereafter, upon relying on the victim's testimony before the grand jury that she was asleep when the defendant first had sexual contact with her, the court assessed 20 points under risk factor 6.

The SORA guidelines provide for the assessment of 20 points under risk factor 6 if the victim suffered from, inter alia, "physical helplessness" (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 11 [2006]). "Physical helplessness" means that "a person is unconscious or for any other reason is physically unable to communicate unwillingness to an act" (Penal Law § 130.00 [7]). This Court and others

have found that definition to include a victim who was asleep at the beginning of the incident (*see e.g. People v Acevedo*, 124 AD3d 500 [2015]; *People v Richardson*, 101 AD3d 837, 838 [2012]; *People v Duff*, 96 AD3d 1031 [2012]; *People v Howell*, 82 AD3d 857 [2011]; *People v Caban*, 61 AD3d 834, 835 [2009]; *People v Harris*, 46 AD3d 1445, 1446 [2007]).

In establishing a sex offender's appropriate risk level assessment under SORA, the People have "the burden of proving the facts supporting the determinations sought by clear and convincing evidence" (Correction Law § 168-n [3]; *see People v Wyatt*, 89 AD3d 112, 117-118 [2011]). "In assessing points, evidence may be derived from the defendant's admissions, the victim's statements, evaluative reports completed by the supervising probation officer, parole officer, or corrections counselor, case summaries prepared by the Board . . . or any other reliable source, including reliable hearsay" (*People v Crandall*, 90 AD3d 628, 629 [2011]; *see People v Mingo*, 12 NY3d 563, 573 [2009] [case summaries, presentence reports, and grand jury testimony meet the "reliable hearsay" standard for admissibility at SORA proceedings]; Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 5; *People v Finizio*, 100 AD3d 977, 978 [2012]). A victim's grand jury testimony has been found to constitute "reliable hearsay" which is routinely relied upon by courts in assessing points under SORA (*see e.g. People v Mingo*, 12 NY3d at 573; *People v Lancaster*, 128 AD3d 786, 787 [2015]; *People v Welch*, 126 AD3d 773 [2015]; *People v Acevedo*, 124 AD3d at 500; *People v Duff*, 96 AD3d at 1031).

The crux of the defendant's argument on the instant appeal is that the People's in camera submission of the minutes of the victim's grand jury testimony, without disclosure to him, and the SORA Court's consideration of those minutes in assessing the 20 points under risk factor 6, violated his due process rights. At *no* time during the SORA hearing did the defendant request access to those grand jury minutes. Inasmuch as the defendant did not request access to the subject grand jury minutes, there is no need to discuss the "two-step procedure" applicable to the disclosure of grand jury minutes (i.e., the defendant must demonstrate a compelling and particularized need for the minutes, after which the court must undertake a balancing of various factors to assess whether disclosure is appropriate under the circumstances presented [*see* CPL 190.25 (4); *People v Robinson*, 98 NY2d 755, 756 (2002); *People v Fetcho*, 91 NY2d 765, 769 (1998); *Matter of Lungen v Kane*, 88 NY2d 861, 862-863 (1996)]). In addition, the defendant did not

argue that he was deprived of any due process protections because the People had submitted those minutes to the SORA Court for an in camera review and had not disclosed them to him. Thus, these contentions are unpreserved for appellate review (*see People v Rodriguez*, 21 NY3d 1030, 1031 [2013]; *People v Charache*, 9 NY3d 829, 830 [2007]; *People v Wise*, 127 AD3d 834, 834-835 [2015]; *People v Leach*, 106 AD3d 1387, 1388 [2013]; *People v McLean*, 55 AD3d 973, 974 [2008]; *People v Cureton*, 299 AD2d 532 [2002]).

In any event, contrary to the defendant's contentions, reversal is not warranted in this case. SORA is regulatory rather than criminal in nature and is not intended to serve as a form of punishment (*see People v Gravino*, 14 NY3d 546, 556-557 [2010]; *People v Pettigrew*, 14 NY3d 406, 408 [2010]; *People v Stevens*, 91 NY2d 270, 275 [1998]; *People v Gallagher*, 129 AD3d 1252 [2015]; *People v Parilla*, 109 AD3d 20, 23-24 [2013]). Thus, "the due process protections required for a risk level classification proceeding are not as extensive as those required in a plenary criminal or civil trial" (*Doe v Pataki*, 3 F Supp 2d 456, 470 [SD NY 1998] [internal quotation marks omitted]; *see People v Gutierrez-Lucero*, 103 AD3d 89, 98 [2012]). However, a sex offender facing a risk level classification under SORA is entitled to certain fundamental due process protections, including notice and an opportunity to be heard (*see People v Gutierrez-Lucero*, 103 AD3d at 101). These rights include: (1) a judicial determination of his or her risk level classification, (2) notice of the classification proceeding sufficiently in advance of the hearing to prepare a challenge, (3) notice of the proceeding which includes a statement of its purpose and the Board's recommended risk level classification, (4) representation by counsel, (5) prehearing discovery, (6) proof by the State of the facts supporting each risk factor by clear and convincing evidence, and (7) a right to appeal (*see* Correction Law § 168-n; *People v David W.*, 95 NY2d 130, 133 [2000]; *People v Gutierrez-Lucero*, 103 AD3d at 98; *People v Brooks*, 308 AD2d 99, 103 [2003]; *Doe v Pataki*, 3 F Supp 2d at 471-473).

The Court of Appeals was recently presented with the issue of whether a defendant's due process rights were violated when the hearing court relied, in part, upon grand jury minutes that were not disclosed to the defense in reaching the defendant's SORA risk level determination (*see People v Baxin*, 26 NY3d 6 [2015]). The Court found that "[g]iven that [the] defendant is entitled to broad discovery of the evidence that is used against him in order to be able to defend himself . . . the failure to disclose the grand jury minutes was a due process violation"

(*id.* at 11). Significantly, the Court concluded that, given the overwhelming evidence which was disclosed to the defendant in support of the same risk factor, the error was harmless (*see id.* at 8, 11-12). It further recognized that "[t]his is not to say that grand jury minutes must be disclosed to the defendant in every SORA proceeding as a matter of course. It remains within the hearing court's discretion to limit the release of such minutes" (*id.* at 11).

Guided by these principles, even assuming that the defendant should have had disclosure of the subject grand jury minutes, as in *Baxin,* any error in failing to disclose them was harmless. There was overwhelming, unchallenged evidence, which provided the requisite clear and convincing evidence supporting the assessment of 20 points under risk factor 6. The record on appeal reveals that the defendant was amply notified through statements contained in the case summary, the pre-sentence report, and other disclosed evidence of the victim's version of the facts and, specifically, her account that she was asleep when the abuse began. Indeed, defense counsel specifically challenged the assessment of points for physical helplessness based upon the victim's account of being asleep when the sexual abuse began. The portion of the victim's grand jury testimony relied upon by the SORA Court, namely, that the victim was asleep at the beginning of the incident, is the exact account contained in the case summary, which was fully disclosed to the defendant. Under these circumstances, the victim's grand jury testimony was cumulative to the disclosed evidence (*see People v Frosch,* 69 AD3d 699, 700 [2010]).

The fact that the victim's grand jury testimony was merely cumulative to the disclosed evidence belies the defendant's claim of prejudice (*see id.* at 700). The defendant's contention that, as a result of the nondisclosure, he was deprived of an opportunity to prepare a challenge and rebut the People's arguments is not supported by the record. At the SORA hearing, the defendant's counsel argued, at length, regarding risk factor 6 and urged the SORA Court to reject the victim's account that she was asleep when the abuse began.

The consistent element throughout this case has been the victim's description of the details of the sexual abuse and her physical and emotional condition at the time of the abuse. Her account was presented to the grand jury, and provided the basis for the indictment. Further, the defendant's counsel acknowledged at the SORA hearing that the victim testified at the trial that she was asleep at the beginning of the sexual abuse. Counsel also referenced a UF-61 complaint report that

contained the same narrative by the victim. The issue of physical helplessness permeated the entire underlying prosecution. The victim's account of the events and, in particular, that she was asleep when the abuse began, remained consistent from the very beginning. In the face of this reality, the defendant's argument that the nondisclosure of the grand jury minutes requires reversal of the order is unsustainable.

Our dissenting colleague contrasts *Baxin* with the instant case on the ground that the defendant herein was convicted following a nonjury trial, whereas the defendant in *Baxin* pleaded guilty to committing various sexual offenses. The dissent concludes that the defendant herein disputed at the trial the People's theory that the complainant was asleep when the abuse began and was ultimately acquitted of the sexual abuse in the first degree count. The record on appeal does not establish what was disputed at the trial, whether the element of physical helplessness was, in fact, challenged, if so how, or why the defendant was acquitted of the sexual abuse in the first degree count.

The defendant's contention that the SORA Court "speculated" as to why the defendant was acquitted on the count of sexual abuse in the first degree is without merit. In fact, a reading of the record shows the exact opposite to be true. The court expressly declined both to speculate as to the trial court's reasons for the acquittal and to hypothesize that the reasons for that acquittal were based upon a finding that the victim was incredible or a determination that the People had failed to prove the element of physical helplessness. The fact that the defendant was acquitted at the trial of sexual abuse in the first degree established only that the trial court did not find all the elements of that offense to have been proved beyond a reasonable doubt, a more rigorous standard of proof than the clear and convincing standard applicable to SORA determinations (*see People v Kost*, 82 AD3d 729 [2011]; *People v Vasquez*, 49 AD3d 1282, 1284 [2008]).

The dissent's reliance on several cases discussing harmless error in the context of criminal convictions (*see e.g. People v Alexander*, 94 NY2d 382 [1999]; *People v Garnes*, 127 AD3d 1104 [2015]; *People v Smith*, 288 AD2d 496 [2001]; *People v Robinson*, 260 AD2d 508 [1999]) is misplaced. These cases conclude that the evidence of the defendant's "guilt" was not overwhelming under the "beyond a reasonable doubt" standard of proof and do not employ the less stringent "clear and convincing" standard of proof applicable in establishing a defendant's risk level assessment pursuant to SORA (*compare* CPL 70.20 *with* Correction Law § 168-n [3]).

The defendant's remaining contentions, including his claim that he was entitled to a downward departure, are without merit.

Accordingly, the defendant was properly designated a level two sex offender. Rivera, J.P., Hinds-Radix and Duffy, JJ., concur.

Miller, J., dissents, and votes to reverse the order, on the law, and remit the matter to the Supreme Court, Queens County, for a new risk assessment hearing and, thereafter, a new determination of the defendant's risk level, with the following memorandum: I respectfully dissent and vote to reverse the order appealed from and remit this matter for a new hearing.

It was error for the Supreme Court to receive and rely upon ex parte evidence that was submitted in camera over the defendant's objection. Even a convicted sex offender who has perpetrated abhorrent acts against his own family has the constitutional right to review the evidence presented against him. This violation of the defendant's fundamental right to due process requires reversal so that the matter may be remitted for a new hearing. The inconvenience that a new hearing would entail cannot reasonably be compared to the importance of ensuring that the Sex Offender Registration Act (Correction Law art 6-C [hereinafter SORA]) process provides all parties with elemental fairness. Accordingly, I respectfully dissent and vote to reverse the order appealed from and remit this matter for a new hearing.

The defendant in this case was charged with (1) sexual abuse in the first degree, (2) sexual abuse in the third degree, (3) incest, and (4) two counts of sexual misconduct (Queens County indictment No. 2500/98). The count charging the defendant with sexual abuse in the third degree alleged that the defendant subjected the complainant to sexual contact without her consent (see Penal Law § 130.55). The count charging sexual abuse in the first degree alleged that the defendant subjected the complainant to sexual contact while she was "incapable of consent by reason of being physically helpless" (Penal Law § 130.65 [2]).

At a nonjury trial, the People's theory was that the complainant was physically helpless because, at the time the sexual contact was initiated, she had been asleep. The complainant testified at the trial that she fell asleep and awoke to find the defendant positioned between her legs and licking her breast. The complainant testified that her bed sheet and clothing had been removed while she lay sleeping and that she did not awake until after the sexual contact had begun.

The defendant's trial counsel challenged the complainant's credibility. He argued that it was unbelievable to think that the complainant had remained asleep while the defendant allegedly undressed her, since such actions would have required him to physically move her 140-pound body. The Supreme Court, in its capacity as the factfinder at the nonjury trial, ultimately determined that the People failed to demonstrate, beyond a reasonable doubt, that the defendant subjected the complainant to sexual contact while she was physically helpless. Accordingly, the court found the defendant not guilty of sexual abuse in the first degree. The defendant was nevertheless convicted of the counts charging him with sexual abuse in the third degree, incest, and sexual misconduct (*see People v Wells*, 289 AD2d 599, 599-600 [2001]).

The defendant was sentenced to, inter alia, concurrent terms of imprisonment. On March 7, 2013, prior to his release from prison, the Board of Examiners of Sex Offenders (hereinafter the Board) completed a Risk Assessment Instrument (hereinafter the RAI), pursuant to SORA. The Board assessed the defendant a total of 85 points on the RAI, a score that would render him a presumptive level two (moderate) sex offender. As relevant here, the Board assessed the defendant 20 points under risk factor 6 on the ground that he had subjected the complainant to sexual contact while she was physically helpless.

By attorney affirmation dated April 8, 2013, the defendant's newly assigned attorney opposed the Board's recommendation. Defense counsel argued, inter alia, that the Board improperly assessed the defendant points under risk factor 6. Defense counsel noted that the defendant had been acquitted on the sole count charging him with subjecting the complainant to sexual contact while she was physically helpless, and contended that the Board's assessment of points under risk factor 6 was unsupported by any reasonable view of the evidence.

The People's position was set forth in an undated document denominated "People's Notice Pursuant to Correction Law § 168-d (3) [sic]" (hereinafter the People's Notice). The People contended, among other things, that the assessment of points under risk factor 6 was appropriate. In this regard, the People "concede[d]" that the defendant's acquittal on the count charging him with sexual abuse in the first degree "prove[d] that 'physical helplessness' was not proven . . . beyond a reasonable doubt." However, the People nevertheless argued that the complainant's sworn testimony *before the grand jury* constituted clear and convincing evidence that she "was 'sleeping'

when [the defendant] raped her." In addition, the People argued that the court (hereinafter the SORA Court) should upwardly depart from the presumptive risk level and adjudicate the defendant a level three sex offender.

In a reply affirmation dated April 30, 2013, the defendant's attorney argued that the People's Notice should be rejected. Defense counsel asserted that the People had served their papers by mail on April 26, 2013, and that they were received by the defendant on April 29, 2013—three days before the scheduled hearing date. Defense counsel argued that the People's submissions should not be considered because they were untimely, in violation of Correction Law § 168-n (3). Defense counsel noted that this hearing date constituted the "third appearance of this matter before the Court . . . with the People having requested both adjournments . . . because they were not prepared to go forward." Defense counsel contended that any further adjournments would "substantially prejudice the defendant, who [had] been held for more than a month beyond his open release date."

The defendant's SORA hearing was held on May 2, 2013. The SORA Court recognized that defense counsel had asked it to "reject the People's papers based on timeliness." Defense counsel indicated that he had "one additional matter" that he wanted to address, and argued that it was inappropriate for the People to rely on the grand jury minutes since this case had gone to trial. Defense counsel also argued:

"In addition the People have not provided this Court or me with Grand Jury minutes and especially under that circumstance, it's inappropriate for the People to rely on them.

"We had a trial in this case, and I submit to the Court since the People have not provided me with the documents on which they are relying in this case, specifically the Grand Jury minutes, they should not be heard to argue as to their contents."

The assistant district attorney (hereinafter the ADA) sought to respond to defense counsel's argument, but the court interjected:

"One second. What I was getting at with your argument with respect to the People being allegedly late in filing their papers and asking the Court to reject their papers, that portion of your argument is denied.

"If you want—if you need further time to respond to anything that the People may have filed, I will give you that time."

After defense counsel stated that he did not want more time,

the SORA Court permitted the ADA to respond to defense counsel's arguments. The ADA acknowledged that the People had failed to comply with the statutory notice provisions, but she asserted that she gave defense counsel a copy of the indictment and the complaint report earlier that morning and that she "did submit in-camera the Grand Jury minutes to th[e] Court, . . . [s]o [defense counsel's] argument that they cannot be considered should fail."

The SORA Court stated that it was "going to permit [the ADA] to file papers at this time." The court stated that if defense counsel requested an adjournment, the request would be granted, but the court did not offer to give defense counsel access to the grand jury testimony. Defense counsel responded that he did not request an adjournment, as he did not "wish any further delay" given that his client remained incarcerated pending the SORA determination. However, defense counsel did "take exception" to the court's ruling. Notwithstanding defense counsel's objection to the use of ex parte evidence, at no point during the SORA hearing did the court raise the possibility of providing the defendant with access to the evidence that had been submitted to it in camera.

The ADA proceeded to address the court with respect to the merits, arguing that the primary issue in this case was risk factor 6. The People contended that the defendant should be assessed 20 points under that risk factor on the ground that the defendant subjected the complainant to sexual contact while she was physically helpless. The ADA represented that she did not "have the trial testimony," but she failed to set forth any efforts that were undertaken to locate the missing trial transcripts and she offered no explanation as to why the trial transcripts could not be located. Although the ADA stated generally that the grand jury minutes were "relevant reliable hearsay," she did not respond to defense counsel's argument that it was inappropriate to rely on grand jury testimony where there had been a full trial, and she declined to provide any explanation as to why the grand jury transcripts constituted the best evidence available.

The ADA stated that while she did not have the trial transcript, she had looked at the "sex crime file" and understood the charges, and it was "clear that physical[ ] helplessness was not charged in this case." The prosecutor repeatedly represented that physical helplessness "was not charged" at the underlying trial, but that "the facts support[ed] a theory of physical helplessness." The ADA stated that the grand jury minutes showed that the complainant fell asleep in the defend-

ant's home and "awakened to find her shirt off and his mouth on her breast." When the SORA Court asked the ADA if there were any other exhibits besides the grand jury minutes that the People wished to present, the ADA handed the court a "complaint report" and referenced the indictment that was already in the court file.

Defense counsel responded that the ADA was "patently incorrect that physical helplessness was not charged in this case." Defense counsel continued: "physical helplessness was charged in the first degree sexual abuse count, and Justice Rotker hearing the evidence and evaluating the credibility of the complainant after seeing and hearing her testify, rejected her credibility in that regard that she was asleep when the abuse began." Defense counsel argued "there is no valid basis upon which this Court re-assessing the evidence should find other than Justice Rotker, the finder of fact." Accordingly, defense counsel concluded that the SORA Court should not assess the defendant 20 points under risk factor 6.

The SORA Court adjudicated the defendant a level two sex offender. The court noted that the principal issue was whether the People showed that the complainant was physically helpless at the time the sexual contact began, resulting in a 20-point assessment under risk factor 6. In this regard, the court stated that the People provided the complainant's grand jury testimony wherein she stated that she was asleep at the beginning of the incident. The court concluded that it could not determine why the trial court had acquitted the defendant of sexual abuse in the first degree, stating that the trial court may have rejected the complainant's testimony that she was asleep at the beginning of the incident, or it may have acquitted the defendant of that count for some other reason. The court determined that for the purposes of the SORA hearing, it "credit[ed] the victim's testimony in the Grand Jury in which she testified that she was sleeping when the defendant first had sexual contact with her." On the basis of this testimony, the court assessed the defendant 20 points under risk factor 6, and ultimately adjudicated the defendant a level two sex offender.

On appeal, the defendant contends that he was deprived of his statutory and constitutional rights to due process when the SORA Court based its determination on grand jury testimony that was not disclosed to him and had been submitted by the People in camera. The defendant also contends that the grand jury testimony did not constitute the "best evidence available," since there had been a trial in this case and there was no show-

ing that the trial transcripts were unavailable (*People v Mingo*, 12 NY3d 563, 574 [2009]).

The People argue that the defendant's "best available evidence" argument is unpreserved for appellate review. The People further argue that the SORA Court properly relied upon the grand jury testimony since such testimony has consistently been held to be sufficiently reliable to be admitted at SORA hearings. The People have addressed the merits of the defendant's due process claim, arguing that they were not required to disclose the grand jury testimony to him and, in fact, could not legally disclose those transcripts in the absence of a court order. The People maintained that the defendant was not prejudiced by his inability to review the grand jury transcripts, since "the relevant portions of the grand jury testimony . . . were referenced in not only the Case Summary prepared by the Board, but in the complaint report as well, both of which the defendant had at the hearing."

As an initial matter, it should be noted that the People have not argued on appeal that the defendant's due process arguments are unpreserved for appellate review. The issue of whether that claim was adequately preserved has not been briefed by either party, and, in my view, it is inappropriate to raise that issue, sua sponte.

In any event, I do not agree with my colleagues' conclusion that the defendant did not preserve this contention for appellate review. The Court of Appeals has held that "in order to preserve a claim of error in the admission of evidence . . . a defendant must make his or her position known to the court" and that the "argument [must] be 'specifically directed' at the alleged error" (*People v Gray*, 86 NY2d 10, 19 [1995], quoting *People v Cona*, 49 NY2d 26, 33 n 2 [1979]; *see* CPL 470.05 [2]; *People v Medina*, 18 NY3d 98, 104 [2011]).

Here, defense counsel repeatedly objected to the People's use of the grand jury testimony at the beginning of the SORA hearing. Defense counsel did not make a generalized objection to the use of that testimony; he specifically stated the grounds for his objection: "since the People have not provided me with the documents on which they are relying in this case, specifically the grand jury minutes, they should not be heard to argue as to their contents." The defendant's failure to explicitly refer to a constitutional subdivision did not render his objections void (*see People v Chestnut*, 19 NY3d 606, 611 n 2 [2012]). Since defense counsel made his position known to the SORA Court, this Court must review the merits of the defendant's argument (*see* CPL 470.05 [2]). Even if the defendant had failed to

preserve this argument, it should be reached in the exercise of discretion since the defendant's due process rights were undeniably violated during the course of this proceeding.

The primary purpose of SORA is "to protect the public from sex offenders" (*People v Mingo,* 12 NY3d at 574). Nevertheless, a "SORA determination undeniably has a profound impact on a defendant's liberty interest due to the registration and community notification provisions" (*People v Brooks,* 308 AD2d 99, 105 [2003]; *see People v Gutierrez-Lucero,* 103 AD3d 89, 98 [2012]; *see also Doe v Pataki,* 3 F Supp 2d 456, 471-473 [SD NY 1998]). For this reason, procedural protections are required to satisfy a defendant's right to due process of law (*see People v Gutierrez-Lucero,* 103 AD3d at 98; *People v Black,* 33 AD3d 981, 981-982 [2006]; *see also Doe v Pataki,* 3 F Supp 2d at 471-473; *accord People v Holmes,* 111 AD3d 686, 687-688 [2013]). Indeed, even where "[t]echnical legal rules of evidence and procedure may be disregarded . . . no essential element of a fair trial can be dispensed with unless waived" (*Matter of Hecht v Monaghan,* 307 NY 461, 470 [1954]; *see People v Russo,* 149 AD2d 255, 261 [1989]).

"[I]ncluded in the fundamental requirement of a fair trial . . . is the entitlement of the party whose rights are being determined to be fully apprised of the proof to be considered, with the concomitant opportunity to cross-examine witnesses, inspect documents and offer evidence in rebuttal or explanation" (*Matter of Simpson v Wolansky,* 38 NY2d 391, 395 [1975]; *see Matter of McBarnette v Sobol,* 83 NY2d 333, 339 [1994]; *Matter of Hecht v Monaghan,* 307 NY at 470; *People v Russo,* 149 AD2d at 261). "It is axiomatic that that which is introduced into evidence must be made available to the parties to the litigation" (*People ex rel. Ryan v Warden, N.Y. City House of Detention,* 113 AD2d 116, 119 [1985]; *see People ex rel. Becker v Mitchell,* 185 AD2d 133, 134 [1992]). Indeed, "[a] hearing is not judicial, at least in any adequate sense, unless the evidence can be known" (*Ohio Bell Telephone Co. v Public Util. Comm'n of Ohio,* 301 US 292, 304 [1937, Cardozo, J.] [internal quotation marks omitted]). "Only the most extraordinary circumstances could support one-sided process" (*American-Arab Anti-Discrimination Comm. v Reno,* 70 F3d 1045, 1070 [9th Cir 1995]; *see United States v Abuhamra,* 389 F3d 309, 328 [2d Cir 2004]; *United States v Accetturo,* 783 F2d 382, 391 [3d Cir 1986]).

Here, in determining that the People satisfied their burden of establishing risk factor 6 by clear and convincing evidence, the SORA Court relied upon grand jury testimony that was

submitted to it in camera. It is undisputed that the defendant was not permitted to review this evidence at any point during the proceedings. Even in the relaxed evidentiary setting of a SORA proceeding, the court's decision, over the defendant's objection, to base its factual findings on evidence that was not provided to the defendant deprived him of his fundamental right to due process under both the state and federal constitutions (*see* US Const, 14th Amend; NY Const, art I, § 6; *People v Baxin*, 26 NY3d 6, 11 [2015]).

The People nevertheless contend that the defendant was not prejudiced by the failure to disclose the grand jury testimony to him since the contents of the grand jury minutes that were relied upon by the People were cumulative to the other versions of the complainant's account contained in evidence that was disclosed to the defendant at the hearing. In other words, the People contend that, under the circumstances, it was harmless to deprive the defendant of his fundamental right to due process of law.

The Court of Appeals has generally stated that where a trial error has "operated to deny an[ ] individual defendant his [or her] fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial . . . without regard to any evaluation as to whether the errors contributed to the defendant's conviction" (*People v Crimmins*, 36 NY2d 230, 238 [1975]). More recently, the Court of Appeals has stated that a violation of due process, such as the one that occurred in this case, may be considered harmless, at least in the context of SORA, so long as the evidence was overwhelming (*see People v Baxin*, 26 NY3d at 11).

In *People v Baxin*, the Court of Appeals considered "whether defendant's due process rights were violated when the hearing court relied, in part, upon grand jury minutes that were not disclosed to the defense" (*id*. at 8). The Court held that "the failure to disclose the grand jury minutes was a due process violation" (*id*. at 11).

The Court of Appeals' holding was premised on the conclusion that a defendant in a SORA proceeding is "entitled to broad discovery of the evidence that is used against him in order to be able to defend himself" (*id*.). Although the Court evidently looked to the statutory rights of the defendant in order to determine the scope of the constitutional protections afforded by the due process clause, the error that it recognized was no mere discovery violation (*see id*.). The defendant in *Baxin*, like the defendant here, was not simply deprived of the timely disclosure of his adversary's proof; neither he nor his at-

torney was ever allowed to even look at the evidence that was used against him (*see id.*).

In *Baxin*, the Court of Appeals nevertheless went on to conclude that although the defendant's right to due process had been violated, the error was "harmless" (*id.*). In *Baxin*, the defendant entered a plea of guilty to an underlying sex offense (*id.* at 8). In conducting its harmless error analysis, the Court stated that "[t]here was overwhelming, unchallenged evidence in the form of the case summary, the criminal court complaint and defendant's own confession, which provided the requisite clear and convincing evidence supporting the assessment of points for a continuing course of sexual misconduct and which had been properly disclosed to defendant" (*id.* at 11-12).

The evidence submitted by the People in this case, so far as the defendant was permitted to review it, was not overwhelming and was challenged. In *Baxin*, the defendant had entered a plea of guilty to the underlying sex crime and the SORA Court relied upon, among other things, the defendant's own lengthy confession in which he admitted to perpetrating the various criminal acts that formed the basis for the imposition of points under the disputed risk factor (*see id.* at 9). By contrast, the defendant in this case went to trial and disputed the People's theory that the complainant was asleep when the abuse began. The defendant was ultimately acquitted of sexual abuse in the first degree after a full trial. At the SORA hearing, the People relied exclusively on the complainant's account to show that she was asleep when the abuse began. There was no confession from the defendant in this case and the People submitted no other proof on this point. Evidence is not overwhelming where, as here, a legal conclusion turns solely on the credibility of a single witness (*see People v Alexander*, 94 NY2d 382, 385 [1999]; *People v Smith*, 288 AD2d 496, 497 [2001]; *People v Robinson*, 260 AD2d 508, 510 [1999]; *People v Chirieleison*, 1 AD2d 844, 845 [1956]). This is true no matter how many times the witness's account is repeated or reproduced (*cf. People v McClean*, 69 NY2d 426, 428 [1987]; *People v Katz*, 209 NY 311, 342 [1913]). Since "[t]he evidence of the defendant's guilt without the erroneously admitted evidence was not overwhelming . . . the error cannot be deemed harmless" (*People v Garnes*, 127 AD3d 1104, 1106 [2015]; *see People v Gonzales*, 111 AD3d 147, 153 [2013]).

Moreover, since the fact-finding determination of the SORA Court in making its determination hinged on the weight to be given to the complainant's account, it is difficult to quantify the precise effect that the grand jury testimony may have had

on the court's factual determination. It is even more difficult to project what use defense counsel would have made of the grand jury testimony if he had been permitted access to it (*cf. People v Casiano*, 67 NY2d 906, 907 [1986]). The People argue that the grand jury testimony had little, if any, effect on the fact-finding determination since the complainant's account of the incident before the gand jury was exactly the same as the version of her account that was reproduced by the Board in the case summary.

Of course, it is impossible for the defendant to dispute the People's assertion. Since the defendant has never been permitted to review the grand jury testimony, he cannot evaluate whether the ex parte evidence is exactly the same as the evidence he was permitted to review. Both at the SORA Court and on this appeal, the defendant's attorney has been effectively barred from exercising his own professional judgment to determine whether the grand jury testimony was consistent with the other accounts given by the complainant and what effect the constitutional error may have had on the factfinder's determination. By relegating these functions solely to the SORA Court and to the People, to be decided behind closed doors under the guise of harmless error review, the defendant's representative has been all but eliminated from the adversarial process. To date, such one-sided process has been reserved for "[o]nly the most extraordinary circumstances" (*American-Arab Anti-Discrimination Comm. v Reno*, 70 F3d at 1070), "when there has been a most compelling need and no alternative means of meeting that need" (*United States v Accetturo*, 783 F2d at 391). But to sanction this process here is to ensure that this species of due process violation will flourish.

The primary goal of SORA is to protect the public from the danger of recidivism posed by sex offenders (*see People v Buss*, 11 NY3d 553, 558 [2008]). As this Court has steadfastly recognized, "[i]n order to ensure that the rights of *all persons* are protected, that goal must invariably coexist with the fundamental elements of due process" (*People v Gutierrez-Lucero*, 103 AD3d at 101). Here, the defendant's fundamental right to due process was violated and this constitutional error cannot be considered harmless. Accordingly, I vote to remit this matter to the Supreme Court, Queens County, for a new risk assessment hearing and, thereafter, a new determination of the defendant's risk level. If, as the People maintain, the properly admitted evidence amply demonstrates the applicability of the disputed risk factor, they would encounter little difficulty in prevailing at a new hearing, at which the defendant's right to due process may be observed.

In light of the foregoing, I do not reach the defendant's remaining contentions, including his argument that the grand jury testimony did not constitute the "best evidence available" since there had been a trial in this case and there was no showing that the trial transcripts were unavailable (*People v Mingo*, 12 NY3d at 574).