People v Barthel (2021 NY Slip Op 04834)





People v Barthel


2021 NY Slip Op 04834


Decided on August 26, 2021


Appellate Division, Fourth Department


NeMoyer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 26, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, TROUTMAN, AND WINSLOW, JJ.


493 KA 18-00164

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOSEPH T. BARTHEL, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






BRIDGET L. FIELD, ROCHESTER, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (DANIEL GROSS OF COUNSEL), FOR RESPONDENT. 


NeMoyer, J.
 Appeal from a judgment of the Monroe County Court (Douglas A. Randall, J.), rendered October 18, 2016. The judgment convicted defendant, after a nonjury trial, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the directive that the sentence imposed run consecutively to the sentence imposed under indictment No. 2015-0954, and as modified the judgment is affirmed.
Opinion by NeMoyer, J.:
A sentencing court has no power to dictate whether its sentence will run concurrently or consecutively to another sentence that has not yet been imposed. When a sentencing court violates that rule and purports to direct the relationship between its present sentence and an anticipated forthcoming sentence, the proper remedy is usually to strike the improper directive, not to remit for a new sentencing proceeding at which the court could exercise the very power it lacked originally.
FACTS
On the night of August 16, 2015, five men — armed with a loaded AK-47 rifle — got into a vehicle and went on a brutal crime spree across the west side of the City of Rochester. The AK-47 accompanied the crew in the vehicle's passenger compartment; given its size, the firearm would have been readily apparent to any person inside the vehicle. During the first installment of their crime spree, several crew members brandished the AK-47 as they robbed and beat a man on Aberdeen Street. In another incident, a crew member used the AK-47 to shoot into a home on Flanders Street. And in a third episode, a different crew member aimed the AK-47 out of the car and shot a female pedestrian on Genesee Street multiple times, nearly killing her.
Defendant was among the five men implicated in the foregoing crime spree, and they were indicted on various counts of criminal possession of a weapon (CPW), robbery, reckless endangerment, attempted murder, and assault. Defendant was tried separately by County Court (Randall, J.) without a jury, and he was ultimately convicted of only one count of CPW in the second degree (Penal Law
§ 265.03 [3]) for possessing the AK-47. County Court later explained that the CPW conviction was based on the doctrine of constructive possession.
County Court thereafter sentenced defendant on the CPW conviction to, inter alia, a determinate term of 5½ years' imprisonment. Notably, County Court directed that such sentence run consecutively to "whatever" sentence was eventually imposed on an unrelated burglary charge to which defendant had pleaded guilty in Supreme Court (Renzi, J.). One day after County Court sentenced defendant on the CPW conviction, Supreme Court sentenced defendant [*2]on the burglary conviction to, inter alia, a determinate term of 9 years' imprisonment. Supreme Court, however, explicitly declined to specify whether the burglary sentence would run concurrently or consecutively to defendant's previously-imposed CPW sentence.
Defendant now appeals from County Court's judgment.[FN1]
DISCUSSION
I
A person is guilty of CPW in the second degree as charged in the indictment when he or she "possesses any loaded firearm" (Penal Law
§ 265.03 [3]). Defendant now argues that the verdict convicting him of that crime is not supported by legally sufficient evidence and is against the weight of the evidence.
Defendant's legal sufficiency argument is unpreserved for appellate review (see People v Gray, 86 NY2d 10, 19 [1995]). With respect to the weight of the evidence, defendant does not dispute that the AK-47 at issue constituted a "loaded firearm" for purposes of Penal Law § 265.03 (3). Rather, defendant argues that the People failed to prove, beyond reasonable doubt, that he "possesse[d]" the AK-47 as required by section 265.03 (3). We disagree; the verdict is not against the weight of the evidence with respect to the possessory element of CPW in the second degree.
A person may "possess a firearm through actual, physical possession or through constructive possession" (People v McCoy, 169 AD3d 1260, 1262 [3d Dept 2019], lv denied 33 NY3d 1033 [2019]). Contrary to the People's intimation, the absence of a formal constructive possession instruction at this bench trial does not preclude us from upholding defendant's CPW conviction on a constructive possession theory. "Trial judges . . . 'are presumed to know the law and to apply it in making their decisions' " (People v Stewartson, 63 AD3d 966, 967 [2d Dept 2009], lv denied 13 NY3d 749 [2009], quoting Lambrix v Singletary, 520 US 518, 532 n 4 [1997]; see People v Chestnut, 19 NY3d 606, 611 n 2 [2012]); thus, when the judgment on appeal was rendered at a bench trial, the Appellate Division exercises its unique factual review power (see CPL 470.15 [5]) by independently weighing the evidence in light of the challenged elements of the crime as defined by law (see People v Jones, 192 AD3d 1656, 1657 [4th Dept 2021], lv denied 37 NY3d 957 [2021]; People v Ponder, 191 AD3d 1409, 1410 [4th Dept 2021]; People v Holes, 118 AD3d 1466, 1467-1468 [4th Dept 2014]; see generally People v Delamota, 18 NY3d 107, 116-117 [2011]; People v Danielson, 9 NY3d 342, 349 [2007]). The doctrine of constructive possession, in turn, is part of the statutory definition of the possessory element at issue in this appeal (see Penal Law § 10.00 [8]). Indeed, constructive possession is a deeply-rooted legal paradigm through which the core possessory element may be proven in any prosecution for a possessory offense (see People v Sierra, 45 NY2d 56, 60 [1978]; People ex rel. Darling v Warden of City Prison, 154 App Div 413, 414 [1st Dept 1913]). It follows that, when reviewing a possessory conviction rendered at a bench trial, the Appellate Division properly considers the doctrine of constructive possession in analyzing a weight-of-the-evidence argument directed at the core possessory element, irrespective of whether the trial court formally instructed itself on that doctrine.[FN2]
"To meet their burden of proving defendant's constructive possession of [a gun], the [*3]People had to establish that [he] exercised dominion or control over [the gun] by a sufficient level of control over the area in which . . . the gun was located" (People v Lawrence, 141 AD3d 1079, 1082 [4th Dept 2016], lv denied 28 NY3d 1029 [2016] [emphasis added and internal quotation marks omitted]; see People v Wilkins, 104 AD3d 1156, 1156 [4th Dept 2013], lv denied 21 NY3d 1011 [2013]; People v Ortiz, 61 AD3d 779, 780 [2d Dept 2009], lv denied 13 NY3d 748 [2009]; People v King, 264 AD2d 428, 429 [2d Dept 1999], lv denied 94 NY2d 881 [2000]). Here, it is undisputed that the subject AK-47 was plainly visible inside the passenger compartment of the vehicle that transported the group of men along their crime spree on the night of August 16, 2015. It is also undisputed that defendant drove that vehicle — with the gun inside — at one point during the crime spree (namely, to and from the Aberdeen Street robbery). The trial evidence thus establishes, beyond a reasonable doubt, that defendant "exercised dominion or control over [the subject AK-47] by a sufficient level of control over the area" — i.e., the vehicle — "in which . . . the gun was located" (Lawrence, 141 AD3d at 1082 [internal quotation marks omitted]), and it necessarily follows that County Court correctly convicted defendant of CPW in the second degree on a theory of constructive possession (see Penal Law § 10.00 [8]; People v Watkins, 151 AD3d 1913, 1914 [4th Dept 2017], lv denied 30 NY3d 984 [2017]; People v Nelson, 139 AD3d 436, 437 [1st Dept 2016], lv denied 28 NY3d 972 [2016]; People v Ward, 104 AD3d 1323, 1324 [4th Dept 2013], lv denied 21 NY3d 1011 [2013]). Contrary to defendant's assertion, the fact that the gun was physically held and used by a rotating assortment of his codefendants at various points during the crime spree "does not preclude a finding of constructive possession by defendant because possession may be joint" (People v Archie, 78 AD3d 1560, 1561 [4th Dept 2010], lv denied 16 NY3d 856 [2011]).[FN3]
II
Defendant next challenges the consecutive aspect of County Court's sentence [FN4]. To refresh, County Court sentenced defendant on the CPW conviction one day before Supreme Court sentenced him on the burglary conviction. Thus, when County Court imposed the CPW sentence, there was no existing burglary sentence to which the CPW sentence could be either concurrent or consecutive. Nevertheless, anticipating that Supreme Court would soon be sentencing defendant on the burglary conviction, County Court preemptively directed that its CPW sentence run consecutively to "whatever" sentence Supreme Court would later impose for burglary. And when Supreme Court subsequently imposed sentence on the burglary conviction, it pointedly and explicitly declined to make any direction as to whether that sentence would run concurrently or consecutively to the previously-imposed CPW sentence.
We must now decide whether County Court had the power to fix the relationship between its present sentence and a future sentence that had not yet been imposed. And if County Court did not have that power, we must then decide how to remedy that error.
A
On the threshold issue, we agree with both defendant and the People that County Court's consecutive-sentencing directive was illegal. "[W]hen a person who is subject to any undischarged term of imprisonment imposed at a previous time . . . is sentenced to an additional term of imprisonment, the sentence . . . imposed by the court shall run either concurrently or consecutively with respect to . . . the undischarged term . . . in such manner as the court directs at [*4]the time of sentence" (Penal Law § 70.25 [1] [emphasis added]). Because the statute empowers sentencing judges to decide whether newly-imposed — i.e., "additional" — custodial terms will run consecutively or concurrently to undischarged custodial terms "imposed at a previous time" (id.), it is well established that the "sentencing discretion afforded by [section] 70.25 (1) devolves upon the last judge in the sentencing chain" (Matter of Murray v Goord, 1 NY3d 29, 32 [2003] [emphasis added]). Here, the last judge in the sentencing chain was Supreme Court, and it thus follows that County Court "had no authority to direct that the sentence for [CPW] be served consecutively to the [burglary] sentence[] that had not yet been imposed" (People v Clapper, 133 AD3d 1036, 1036 [3d Dept 2015] [Clapper I]; see also Matter of Oquendo v Quinones, 291 AD2d 593, 594 [3d Dept 2002]).[FN5]
Up to this point, the analysis is straightforward: County Court had no power to usurp Supreme Court's prerogative to determine whether the subsequent burglary sentence would run concurrently or consecutively with the antecedent CPW sentence. But how should we remedy County Court's improper exercise of a sentencing prerogative reserved to Supreme Court? On that issue, the parties disagree and the law is scarce.
B
Defendant asks us to simply vacate County Court's improper directive concerning consecutive sentencing. For all practical purposes, defendant's proposed remedy would make his two sentences concurrent by default. After all, Supreme Court explicitly declined to fix any relationship between the burglary sentence and the previously-imposed CPW sentence, and (absent certain inapplicable exceptions) a sentencing court's "silence on this issue" — i.e., whether a newly-imposed sentence will run concurrently or consecutively to a prior undischarged sentence — "render[s] those sentences concurrent by operation of law under Penal Law § 70.25 (1) (a)" (People v Richardson, 100 NY2d 847, 852 [2003]; see e.g. People v Allende, 78 AD3d 553, 553 [1st Dept 2010], lv denied 16 NY3d 827 [2011]; People v Pitts, 75 AD2d 719, 720 [4th Dept 1980]). Consequently, in light of Supreme Court's intentional silence on the subject, the presumption of concurrency set forth in section 70.25 (1) (a) would be immediately triggered by vacating County Court's improper consecutive directive.
The People, on the other hand, ask us to vacate the CPW sentence in its entirety and remit the matter to County Court for resentencing on that conviction. As a practical matter, the People's proposed remedy would preserve the possibility of consecutive sentencing on remittal. That is because County Court would necessarily become the last judge in the sentencing chain at any future resentencing hearing, and County Court's newly-acquired status in that regard would invest it with the statutory prerogative to decide whether the resentence on the CPW conviction would run concurrently or consecutively to Supreme Court's now-antecedent sentence on the burglary conviction (see People v Clapper, 153 AD3d 1452, 1453 [3d Dept 2017] [Clapper II], lv denied 30 NY3d 1059 [2017]).
We hold that vacating the illegal consecutive directive is the only proper remedy under these circumstances. The People's proposal to vacate the CPW sentence and remit for resentencing is procedurally untenable, would perversely incentivize trial judges to usurp the sentencing powers of their colleagues, and is inconsistent with the statutory guideposts through which our remedial discretion in criminal cases must be channeled.
C
Analysis begins with CPL 470.20, the statutory basis of the Appellate Division's remedial powers in criminal appeals. CPL 470.20 initially prescribes the following standard:
"[u]pon reversing or modifying a judgment, sentence or order of a criminal court, an [*5]intermediate appellate court must take or direct such corrective action as is necessary and appropriate both to rectify any injustice to the appellant resulting from the error or defect which is the subject of the reversal or modification and to protect the rights of the respondent."
The foregoing prescription functions as a default rule, because CPL 470.20 goes on to enumerate six specific "rules" that "govern[] in part" the corrective action to be taken by the Appellate Division in certain frequently-encountered scenarios. Not surprisingly, none of those six specific "rules" offer any guidance in selecting an appropriate remedy for the unusual situation present here, i.e., a partially illegal sentence attributable to the sentencing judge's improper exercise of a statutory power reserved to a different judge. We are thus left with only the default rule, which obligates us to fashion a "necessary and appropriate" remedy that will "both" "rectify any injustice" that defendant suffered as a result of the illegal consecutive directive and "protect the rights of the [People]" (CPL 470.20).
The default rule of CPL 470.20 does not prescribe a rigid, one-size-fits-all approach for remedying sentences infected with illegal concurrent/consecutive directives (see People v LaSalle, 95 NY2d 827, 829 [2000]). In LaSalle, the People argued that the Appellate Division, upon finding a sentence to be illegally consecutive, had no power under CPL 470.20 to reform the illegality on its own and was instead obligated to vacate the sentence and remit for resentencing by the trial court (id.). The Court of Appeals disagreed, holding that "an intermediate appellate court, in exercising its responsibility under CPL 470.20 to take 'such corrective action as is necessary and appropriate,' has the discretion, upon reversing or modifying a sentence, either to remit to the trial court for resentencing or to substitute its own legal sentence for the illegally imposed sentence" (id.). And under the circumstances presented in LaSalle, the Court of Appeals continued, "[t]he Appellate Division did not abuse its discretion by choosing the latter option" (id.).
Given the wide variety of scenarios and procedural postures in which an improperly consecutive or concurrent sentence could be imposed, the flexibility of the LaSalle rule affords the Appellate Division the discretion necessary to tailor the remedy to the unique circumstances of each case. A sentence can be illegally consecutive or concurrent for a multitude of distinct reasons, and not every illegally consecutive or concurrent sentence will necessarily call for the same remedy. Illegally structured sentences imposed after a trial on a multi-count indictment, for example, present different remedial considerations than illegally structured sentences imposed in accordance with a carefully calibrated (albeit technically improper) plea bargain. Likewise, illegally consecutive sentences traceable to the defect discussed in People v Laureano (87 NY2d 640, 642-644 [1996]) (i.e., where the underlying crimes were "committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other" [Penal Law § 70.25 (2)]) implicate different remedial considerations than, for example, an illegally concurrent sentence traceable to a sequentiality defect (i.e., where the current crime was committed after the imposition of a prior undischarged sentence [see Penal Law § 70.25 (2-a)]). And given their unusually procedural nature, illegally consecutive sentences traceable to a Murray error (i.e., the last-in-time judge dilemma present here [see 1 NY3d at 32]) implicate yet a different set of remedial considerations than would apply to more common scenarios in which the challenged sentence is substantively illegal irrespective of any particular judge's spot in the sentencing chain. Ultimately, in each of the foregoing categories, the Appellate Division must balance the relevant remedial considerations in order to fashion a remedy that "both" "rectif[ies] any injustice" suffered by the defendant and "protect[s] the rights of the [People]" (CPL 470.20).
D
The Third Department's rulings in Clapper are the only appellate decisions to have confronted, within the procedural context of a direct appeal, an illegally consecutive sentence traceable to the precise Murray error that infects the sentence in this case. In that case, the defendant (Scott A. Clapper) initially pleaded guilty to several crimes in Schoharie County and thereafter pleaded guilty to a separate crime in Schenectady County (Clapper I, 133 AD3d at 1036). When Mr. Clapper was later sentenced on his Schenectady plea, the judge directed that such sentence run consecutively to the Schoharie sentences (id.). Mr. Clapper had not yet been sentenced in Schoharie when the Schenectady judge issued his consecutive directive, however (id.). And when Mr. Clapper was subsequently sentenced in Schoharie, the Schoharie judge did not specify whether the Schoharie sentences would run consecutively or concurrently to the previously-[*6]imposed Schenectady sentence (see Clapper v Yelich, 2019 WL 185684, *2 [ND NY Jan. 14, 2019, No. 9:18-CV-0102 (LEK)]). The foregoing sequence of events is remarkably similar to those at bar; in our case, County Court occupies the same position as the Schenectady judge, and Supreme Court occupies the same position as the Schoharie judge.
On appeal from the Schenectady judgment, the Third Department held that the consecutive directive was illegal because, at the time it was issued, Mr. Clapper had not yet been sentenced in Schoharie (Clapper I, 133 AD3d at 1036-1037). Quoting Murray, the Third Department explained that the " 'last judge in the sentencing chain' " — i.e., the Schoharie judge — had the power to determine the relationship between the Schoharie sentences and the previously-imposed Schenectady sentence (id. at 1037, quoting 1 NY3d at 32). After completing its substantive analysis of the Schenectady sentence's illegality, the Third Department pivoted to the question of remedy with this sentence: "Accordingly, the sentence here must be vacated and the matter remitted for resentencing" (id.). The Third Department cited no authority for its remedial determination, and it did not explain how or why it had selected resentencing as the proper remedy under these circumstances. Mr. Clapper did not seek leave to appeal to challenge the Third Department's chosen remedy (see generally CPL 450.90 [2] [b]; CPL 470.35 [2] [c]).
The Schenectady judge subsequently reimposed the same sentence on remittal, and he ran that resentence consecutively to the now-antecedent Schoharie sentences (Clapper II, 153 AD3d at 1453). Mr. Clapper appealed and challenged the resentence, which was identical in all respects to the original sentence that the Third Department had vacated as illegal. The Third Department upheld the resentence, however. In so doing, the Third Department suggested that, because Mr. Clapper was resentenced in Schenectady after he was sentenced in Schoharie, the Schenectady judge had, on remittal, become the last judge in the sentencing chain. As such, the Third Department concluded, the Schenectady judge had the authority, on remittal, to decide whether the resentence on the Schenectady conviction would run concurrently or consecutively to the now-antecedent Schoharie sentences (id.).
E
We decline the People's invitation to follow Clapper I's remedial determination under the circumstances at bar. Our reasoning is as follows.
Had County Court adhered to the statutory limitation on its sentencing authority and deferred to the last judge in the sentencing chain — i.e., Supreme Court — to set the relationship between the various sentences, then defendant would have served his sentences concurrently in light of Supreme Court's subsequent refusal to specify whether the burglary sentence would run consecutively or concurrently to the CPW sentence (see Richardson, 100 NY2d at 852, citing Penal Law § 70.25 [1] [a]). The People would have had no avenue to appeal, and there would have been no legal grounds to alter County Court's sentence in any respect. But County Court did not adhere to the relevant statutory limitation on its sentencing authority, and if we remedy that error by vacating defendant's CPW sentence and remitting for resentencing before County Court, then County Court will leap-frog Supreme Court and become the last judge in the sentencing chain at the resentencing hearing — just as the Schenectady judge leap-frogged the Schoharie judge to become the last judge in the sentencing chain in Clapper II. County Court would thereby possess, at the resentencing hearing, the very power that it lacked originally, i.e., the prerogative to decide whether the CPW sentence will be consecutive or concurrent to the burglary sentence. And County Court would only have that prerogative at a future resentencing hearing because it disregarded the limitations on its power at the original sentencing hearing and triggered a successful appeal.
In short, remittal would in no way "rectify [the] injustice to [defendant] resulting from the error or defect which is the subject of the reversal or modification" (CPL 470.20). To the contrary, by empowering County Court to make the precise direction on remittal that it had no authority to make originally (see Clapper II, 153 AD3d at 1453), remitting for resentencing would effectively reward the People for County Court's legal error at the original sentencing hearing.
Rather than remitting for resentencing, the proper remedy under these circumstances is to simply vacate County Court's improper directive with respect to consecutive sentencing. That [*7]remedy will put defendant in the same position as if County Court had not issued that illegal directive in the first place. Such a remedy will also adequately "protect" the People's interests, since it will place them in the exact position they would have occupied had County Court not issued its illegal directive. Indeed, because the People had no legitimate right or interest in County Court's original illegal sentence, the People have no right or interest that could be "protected" with a remittal order calculated only to achieve the very outcome — consecutive sentencing — that they had no right to obtain in the first place.[FN6]
F
People v Rodriguez (18 NY3d 667 [2012]) is consistent with our remedial determination. In that case, the defendant was convicted by a jury on five felony counts, and the trial judge carefully selected and structured the five ensuing sentences so as to produce an aggregate determinate term of 40 years' imprisonment (id. at 669). It turned out, however, that the judge had illegally run two particular sentences consecutively to each other (id.), and that simply correcting that discrete illegality would reduce the aggregate custodial term far below the 40 years deemed appropriate by the trial judge. Accordingly, the First Department both ran the two problematic sentences concurrently to each other and "remand[ed] the matter to the trial court so that it may restructure the sentences to arrive lawfully at the aggregate sentence which it clearly intended to impose" (People v Rodriguez, 79 AD3d 644, 645 [1st Dept 2010], affd 18 NY3d 667 [2012]). The Court of Appeals affirmed, holding that the First Department's remedy was consistent with CPL 470.20 and was not barred by CPL 430.10 (see 18 NY3d at 670-671).
Given the fundamental differences between Rodriguez's remedy and Clapper I's remedy, the Court of Appeals' explicit endorsement of the former does not implicitly validate the latter, much less the broad application of the latter that the People seek here. Unlike the remedy selected by the Third Department in Clapper I, the remedy selected by the First Department in Rodriguez did not by itself grant the trial judge the power to do something on remittal that he could not have done lawfully at the original sentencing hearing. Rather, the First Department's chosen remedy in Rodriguez merely afforded the trial judge an opportunity, after learning that his original sentences were partially illegal, to re-exercise a power that he unquestionably possessed at the original sentencing hearing, i.e., the prerogative to structure the relationship between multiple sentences imposed "at the same time" (Penal Law § 70.25 [1]).
Reasonable minds could disagree about the wisdom and legality of the remedy selected in Rodriguez, but one cannot deny the qualitative difference between a remedy that facilitates a trial judge's re-exercise of an undisputed pre-existing power (as in Rodriguez) and a remedy that purports to cure an unlawful judicial act by authorizing the repetition of that very act (as in Clapper I). In our view, absent unusual circumstances or considerations not present here, an error cannot be effectively remedied with a procedure that itself makes lawful the repetition of that error on remittal. Error laundering, after all, cannot be what the Legislature had in mind when it commanded the Appellate Division to fashion "necessary and appropriate" remedies that "rectify any prejudice" to aggrieved appellants (CPL 470.20).
III[*8]
Finally, we reject defendant's contention that his 5½-year term of imprisonment is "unduly harsh or severe" (CPL 470.15 [6] [b]). Defendant criminally possessed the subject AK-47 in the midst of an unnerving crime spree that visited random acts of violence upon multiple people who posed no threat to him or his codefendants. Less than a month later, defendant burglarized a stranger's home and stole various items inside. Defendant has a prior federal conviction for trafficking firearms as well as a prior youthful offender adjudication for an assault in which he punched the victim several times in the face, and he subsequently violated the terms of his probation on that adjudication by failing to report, getting arrested multiple times, failing to pay restitution, and possessing a handgun. Contrary to defendant's assertions, his commission of the instant offense at the age of 19 and his purported skills as a football player are veritably inconsequential when arrayed against his demonstrated penchant for violating the social contract. We perceive no reason to reduce defendant's sentence (see generally People v Thomas, 194 AD3d 1405, 1406 [4th Dept 2021]; People v Suitte, 90 AD2d 80, 83-89 [2d Dept 1982]).
CONCLUSION
Accordingly, in light of the foregoing, we modify the judgment by vacating County Court's directive regarding consecutive sentencing. As so modified, the judgment is affirmed.
Entered: August 26, 2021
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: By separate order entered herewith, we unanimously affirmed Supreme Court's judgment (see People v Barthel [appeal No. 2], — AD3d — [Aug. 26, 2021] [4th Dept 2021]).

Footnote 2: The analytical framework might be different if, during a bench trial, the judge explicitly refused to consider the doctrine of constructive possession or explicitly founded the verdict exclusively upon a legal theory other than constructive possession (see generally People v LaFontaine, 92 NY2d 470, 474 [1998], rearg denied 93 NY2d 849 [1999]). In this case, however, County Court explicitly founded defendant's conviction upon a theory of constructive possession.

Footnote 3: Because the verdict is supported by the weight of the evidence on a theory of constructive possession, we need not consider whether the evidence would support a conviction under either the automobile presumption or the principles of accomplice liability (see People v Conroy, 53 AD3d 438, 441 [1st Dept 2008], lv denied 11 NY3d 735 [2008], cert denied 555 US 1013 [2008]).

Footnote 4: Defendant's contention is exempt from the preservation requirement "because it involves the essential nature of the right to be sentenced as provided by law" (People v Hakes, 32 NY3d 624, 628 n 3 [2018] [internal quotation marks omitted]; see People v Samms, 95 NY2d 52, 54-58 [2000]; People v Consalvo, 89 NY2d 140, 146 [1996]; People v Fuller, 57 NY2d 152, 156 [1982]).

Footnote 5: Nothing in Penal Law § 70.25 (1) or Murray bars a mid-chain sentencing judge from making a formal recommendation to the end-chain sentencing judge in order to assist that jurist in fashioning an appropriate relationship between the various sentences.

Footnote 6: As an aside, we note that Mr. Clapper pleaded guilty in Schenectady with the understanding that his sentence for that crime would be served consecutively to his Schoharie sentences (Clapper II, 153 AD3d at 1453; Clapper I, 133 AD3d at 1036). Thus, unlike the Monroe County District Attorney in this case, the Schenectady County District Attorney had some legitimate interest in consecutive sentencing that arguably warranted "protect[ing]" in Clapper I (CPL 470.20; cf. People v Backus, 14 NY3d 876, 877 [2010]; People v Thompson, 60 NY2d 513, 519-520 [1983]). We need not and do not decide whether we would adopt Clapper I's remedy had the People possessed a comparable interest in consecutive sentencing in this case (cf. generally People v Moquin, 77 NY2d 449, 451-455 [1991], rearg denied 78 NY2d 952 [1991]; Matter of Budelmann v Leone, 122 AD3d 1271, 1272-1273 [4th Dept 2014]).